**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 12 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS
TENTH CIRCUIT

---

FRED W. PHELPS, SR., JONATHAN B.
PHELPS, KARL D. HOCKENBARGER,
CHARLES F. HOCKENBARGER,
TIMOTHY B. PHELPS,
MARGIE J. PHELPS,

      Plaintiffs-Appellants,

v.

JOAN HAMILTON, in her official
capacity as District Attorney,

      Defendant-Appellee.

No. 95-3403

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 93-4148-LRW)

---

Elizabeth M. Phelps, Phelps-Chartered, Topeka, Kansas, and Margie J. Phelps, Topeka, Kansas, for Plaintiffs-Appellants.

Deanne Watts Hay and Martha A. Peterson, Sloan, Listrom, Eisenbarth, Sloan & Glassman, L.L.C., Topeka, Kansas, for Defendant-Appellee.

---

Before BRORBY, HENRY, and MURPHY, Circuit Judges.[*]

---

[*]     After examining the briefs and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

HENRY, Circuit Judge.

This case is before us on appeal from the district court's order denying the plaintiffs' petition for an award of attorney's fees under 42 U.S.C. § 1988. The district court found that while the plaintiffs were a "prevailing party" for purposes of awarding fees, the plaintiffs' degree of success on their claims did not justify an award. We exercise jurisdiction under 28 U.S.C. § 1291 and reverse and remand.

**BACKGROUND**

The underlying action here arises from the plaintiffs' 42 U.S.C. § 1983 suit seeking declaratory and injunctive relief from state criminal prosecutions arising in response to their anti-homosexual picketing and from three state statutes which allegedly threatened their picketing activities. The plaintiffs sought to enjoin the defendant, District Attorney Joan Hamilton, from enforcing valid criminal laws against them, alleging that Ms. Hamilton brought the state prosecutions in bad faith violation of their First Amendment rights. The plaintiffs also sought declaratory relief concerning the constitutionality of the three state statutes under which they had not been prosecuted: the Kansas Funeral Picketing Act, Kan. Stat. Ann. § 21-4015 (1995); the Kansas Anti-Stalking Statute, Kan. Stat. Ann. § 21-3438 (1995); and the telefacsimile amendment to

2

the Kansas Telephone Harassment Statute, Kan. Stat. Ann. § 21-4113 (1995).

In several separate rulings, the district court granted summary judgment for the plaintiffs on their constitutional challenge to the Kansas Funeral Picketing Act, but held for Ms. Hamilton on the bad faith and two additional statutory claims. First, on December 23, 1993, the district court ruled that while the plaintiffs had constitutional standing to bring a facial challenge to the Kansas Funeral Picketing Act because the Act targeted the plaintiffs and had a "chilling" effect on their First Amendment rights, they did not have standing to challenge the Kansas Anti-Stalking Statute or the telefacsimile amendment to the Kansas Telephone Harassment Statute. Second, on March 31, 1995, the district court granted Ms. Hamilton partial summary judgment, holding that the state trial court rulings that the state prosecutions were not brought in bad faith were entitled to full faith and credit pursuant to 28 U.S.C. § 1738. Third, on April 28, 1995, the district court granted the plaintiffs summary judgment on their facial challenge to the Kansas Funeral Picketing Act, finding the statute unduly vague in its use of the terms "before" and "after a funeral." Finally, after the Kansas legislature amended this language in the Kansas Funeral Picketing Act to read "within one hour prior to, during and two hours following the commencement of a funeral," the district court, on July 27, 1995, denied the plaintiffs' motion for modification and supplementation of the April 28, 1995 order, which sought rulings on other constitutional aspects of the Kansas Funeral Picketing Act.

Subsequent to these rulings, the plaintiffs moved for an award of attorney's fees on

3

the ground that they were prevailing parties as to their constitutional challenge to the Kansas Funeral Picketing Act. On November 13, 1995, the district court ruled that while plaintiffs were "prevailing parties" under 42 U.S.C. § 1988, based upon its consideration of the degree of the plaintiffs' overall success and the nature of the relief awarded, it determined that a fee award was not appropriate in this case. In addition, the court noted that pro se plaintiffs may not recover fees under § 1988 and, therefore, Margie J. Phelps, who was both a plaintiff and an attorney in the case, "would not be entitled to an award of attorney's fees under any circumstances." Aplts' app., at 85 n.3 (Dist. Ct. Order dated Nov. 13, 1995). The plaintiffs now appeal that decision.

## DISCUSSION

We review a district court's decision to award or deny attorney's fees under 42 U.S.C. § 1988 for an abuse of discretion. Withiam v. Baptist Health Care of Oklahoma, Inc., 98 F.3d 581, 584 (10th Cir. 1996). Under this standard, the district court should "provide a concise but clear explanation of its reasons for the fee award." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983); accord Beard v. Teska, 31 F.3d 942, 955 (10th Cir. 1994). Although the ultimate decision to award fees rests within the district court's discretion, any statutory interpretation or other legal conclusions that provide a basis for the award are reviewable de novo. Supre v. Ricketts, 792 F.2d 958, 961 (10th Cir. 1986).

4

Section 1988(b) provides that in federal civil rights actions "the court, in it discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). This language indicates that there are two elements in deciding whether to award attorney's fees. First, the party seeking fees must qualify as a "prevailing party." Second, the fee itself must be "reasonable." See id. Furthermore, while § 1988(b) grants the district court "discretion" in awarding fees, we have previously recognized that Congress intended this discretion to be narrow once the plaintiff meets the "prevailing party" inquiry. See Chicano Police Officers Ass'n v. Stover, 624 F.2d 127, 130 (10th Cir. 1980) ("A party seeking to enforce the rights protected by [the Civil Rights Act of 1964], if successful 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'")) (quoting S. Rep. No. 1011, 94th Cong., 2nd Sess. 4 (1976), reprinted in 1976 U.S.C.C.A.N. 5908, 5912).

The first question in determining whether a party is entitled to attorney's fees under § 1988 is whether he or she qualifies as a "prevailing party." Under its "generous formulation" of the term, the Supreme Court has held that a plaintiff "prevails" "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar v. Hobby, 506 U.S. 103, 109, 111-12 (1992). Accordingly, the elements of "prevailing party" status include "at least some relief on the merits" of the plaintiff's

claim and relief through "an enforceable judgment against the defendant . . . or comparable relief . . . ." Id. at 111. Furthermore, the Court added that the "prevailing party inquiry does not turn on the magnitude of the relief obtained" and that the "'degree of the plaintiff's success' does not affect 'eligibility for a fee award.'" Id. at 114 (quoting Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 790 (1989)).

In the instant case, the district court determined that the plaintiffs prevailed "on one of two issues in this litigation and in so doing, achieved some of the benefit they sought in bringing suit." Aplts' app. at 84 (Dist. Ct. Order dated Nov. 13, 1995). The prevailing claim referred to by the district court was the court's declaratory judgment that the Kansas Funeral Picketing Act was unconstitutionally vague. See id. at 82. On this basis, the district court held that the plaintiffs had met the threshold "prevailing party" test and were technically eligible for attorney's fees. See id. at 84.

We agree with the district court on this question. The plaintiffs brought four substantive claims in their civil rights case--one of which challenged the constitutionality of the Kansas Funeral Picketing Act. Although the plaintiffs were not charged under the Kansas Funeral Picketing Act, they were able to establish constitutional standing to facially challenge the statute because "the plaintiffs' First Amendment rights arguably were chilled from the resulting threat of arbitrary enforcement." Phelps v. Hamilton, 840 F. Supp. 1442, 1462 (D. Kan. 1993). The district court then found the terms "before" and "after" a funeral as used in the Kansas Funeral Picketing Act were unconstitutionally

6

vague--thereby preventing the defendant or any other state prosecutor from utilizing the Kansas Funeral Picketing Act to bring an enforcement action against the plaintiffs or anyone else. See Aplt's App. at 93 (Dist. Ct. Order dated Apr. 28, 1995).

While the declaratory judgment in this case was not directly enforceable against Ms. Hamilton, this court has previously held that a district attorney's failure to take official action to enforce a statute does not bar an award of attorney's fees arising from a declaratory judgment invalidating that statute. See Wilson v. Stocker, 819 F.2d 943, 951-52 (10th Cir. 1987). In Wilson, we held that an attorney's fee award against a district attorney in a declaratory judgment action was not excused due to the district attorney's failure to enforce the statute in question. See id. The reasoning behind this holding is that the purpose of § 1988 is not to penalize defendants, but rather to encourage injured individuals to seek relief. See id. at 951. See also In re Kansas Congressional Dist. Reapportionment Cases, 745 F.2d 610, 612 (10th Cir. 1984) (stating that "'[f]ee awards against enforcement officials are run-of-the-mill occurrences, even though, on occasion, had a state legislature acted or reacted in a different or more timely manner, there would have been no need for a lawsuit or for an injunction'") (quoting Supreme Ct. of Va. v. Consumers Union of the United States, 446 U.S. 719, 739 (1980)). Therefore, the plaintiffs met the two required elements to achieve "prevailing party" status: they obtained "at least some relief on the merits" of their claims and materially altered "the

7

legal relationship between the parties by modifying the defendant's behavior in a way that directly benefit[ted] the plaintiff[s]." Farrar, 506 U.S. at 111-12.

The second question in the attorney's fees inquiry is to determine what amount of "reasonable attorney's fees" should be awarded to the prevailing party. 42 U.S.C. § 1988(b). A court will generally determine what fee is reasonable by first calculating the lodestar--the total number of hours reasonably expended multiplied by a reasonable hourly rate--and then adjust the lodestar upward or downward to account for the particularities of the suit and its outcome. See Hensley, 461 U.S. at 433-34. In cases which result in a merely technical or de minimus award, however, a court may "lawfully award low fees or no fees" without calculating a lodestar. Farrar, 506 U.S. at 115. Thus, "[i]n some circumstances, even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all." Id. at 115. The rationale for this rule, as explained by the Court, is that "'if a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.'" Id. at 114 (quoting Hensley, 461 U.S. at 436).

In determining the amount of the attorney's fees in this case, the district court relied on Farrar in concluding that the circumstances of this case dictated that no fee should be awarded. The basis for this holding was three-fold: (1) the plaintiffs did not succeed on their "primary claim" which sought to invalidate the underlying state prosecutions as unconstitutional; (2) "[t]he plaintiffs themselves have complained that

8

this Court's Judgment in their favor on the Act's unconstitutionality afforded them 'no definitive final relief . . . .'"; and (3) pro se plaintiffs, including pro se lawyers, such as Margie J. Phelps, may not recover fees under any circumstances under § 1988. See Aplts' App. at 85 nn.1-3 (Dist. Ct. Order dated Nov. 13, 1995). Based on this reasoning, the district court concluded that "the plaintiffs' overall success in this case and the nature of the relief awarded" made this case fall within "that category of cases described by the Supreme Court in Farrar where the most appropriate and reasonable fee award is no fee at all." Id. at 85.

Based upon the record before us, we disagree with the district court's ruling that the present case fits within that narrow category of cases where no attorney's fees should be awarded. The general rule under § 1988 is that "the prevailing party 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" Blanchard v. Bergeron, 489 U.S. 87, 89 n.1 (1989) (quoting Newman v. Piggie Park Ents., Inc. 390 U.S. 400, 402 (1968)); see Dahlem, 901 F.2d at 1514. In enacting § 1988, Congress pointed out that "[a]ll of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain." S. Rep. No. 1011, 94th Cong., 2nd Sess. 2 (1976), reprinted in 1976 U.S.C.C.A.N. 5908, 5910. In view of this clearly expressed congressional intent, our circuit has recognized that the "district court's discretion to deny fees to a prevailing

9

party is quite narrow." Wilson, 819 F.2d at 951 (citing J&J Anderson, Inc. v. Town of Erie, 767 F.2d 1469, 1474 (10th Cir. 1985)) ("[T]here are few cases denying attorney fees to a prevailing party as unjust under § 1988," and "[a] strong showing of special circumstances is necessary to support a denial.").

In analyzing whether a plaintiff's victory is purely technical or de mininis, we look for guidance to Justice O'Connor's concurrence in Farrar which distills various principles from the Court's § 1988 case law into a three-part test to determine whether a prevailing party achieved enough success to be entitled to an award of attorney's fees. The "relevant indicia of success" in such cases are: (1) the difference between the judgment recovered and the recovery sought; (2) the significance of the legal issue on which the plaintiff prevailed; and (3) the public purpose of the litigation. 506 U.S. at 121-22 (O'Connor, J., concurring). See Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996) (adopting Justice O'Connor's three-part approach to evaluate whether a plaintiff's victory was merely technical or de mininis); Jones v. Lochart, 29 F.3d 422, 423-24 (8th Cir. 1994) (same); Cartwright v. Stamper, 7 F.3d 106, 109 (7th Cir. 1993) (same).

The first and "'most critical factor' in determining the reasonableness of a fee award is 'the degree of success obtained.'" Farrar, 506 U.S. at 114 (quoting Hensley, 461 U.S. at 436). The plaintiffs in this case sought injunctive and declaratory relief with regard to their underlying state court prosecutions and three state statutes. Although, as the district court points out, the plaintiffs did not succeed on their "primary" bad faith

10

claim, they did obtain a declaratory judgment overturning the Kansas Funeral Picketing Act as unconstitutionally vague. That the plaintiffs prevailed on only one of their four underlying claims itself does not diminish the reasonableness of awarding some attorney's fees commensurate with their legal efforts in bringing that claim. See Jane L. v. Bangerter, 61 F.3d 1505, 1511 (10th Cir. 1995) (holding that plaintiffs' success on two of their eight challenges to the Utah's Abortion Act resulted in success sufficient to award attorney's fees based upon a qualitative assessment of the relative importance of plaintiffs' successes and failures). Accordingly, this factor does not weigh in favor of characterizing the plaintiffs' victory as merely technical or de mininis.

The second factor in the Farrar calculus goes beyond the actual relief awarded to examine the extent to which the plaintiffs succeeded on their theory of liability. See 506 U.S. at 121 (O'Connor, J. concurring). In the underlying action, the plaintiffs sought declaratory relief invalidating the Kansas Funeral Picketing Act on its face and as applied to them. The district court ruled that the plaintiffs did not have standing to challenge the Kansas Funeral Picketing Act as applied, but that they did have standing to bring a facial challenge. The plaintiffs' facial challenge proceeded on three theories: "(a) It is overbroad in that it permits application to protected speech. (b) It is unduly vague in its use of the terms "before", "after" and "about". (c) The statute was passed to target certain speech, based upon its content, and specifically the speech of plaintiffs and other

11

members of the Westboro Baptist Church." Aple's app. at 65 (Plaintiffs' Second Amended Complaint dated Nov. 15, 1993).

In ruling on the plaintiffs' challenge, the district court held that the Kansas Funeral Picketing Act was unduly vague in its use of the terms "before" and "after". Aple's Supp. app. at 88 (Dist. Ct. Order dated Apr. 28, 1995). In so ruling, the district court determined that "[b]ecause the Court finds this argument dispositive, the Court has not addressed the remaining constitutional claims asserted by the plaintiffs . . . ." Id. at 90. Given that the district court accepted the plaintiffs' vagueness argument in invalidating the Kansas Funeral Picketing Act, it is clear that they have succeeded on one of their theories of liability in this case. While the plaintiffs later moved to modify the district court's order to address their additional constitutional claims after the Kansas legislature amended the Kansas Funeral Picketing Act--a motion from which the district court extracts the plaintiffs' statement that the court's judgment did not afford them definitive relief--we decline to use this evidence to evaluate the plaintiffs' initial success in invalidating the statute.

The third inquiry under Farrar considers the public purpose served by the plaintiffs' success. See 506 U.S. at 578-79 (O'Connor, J., concurring). This factor examines whether the judgment vindicates important rights and deters future lawless conduct as opposed to merely "occupying the time and energy of counsel, court , and client." Id. at 578. In the present case, the plaintiffs obtained a declaratory judgment

12

invalidating a state statute. Not only did this ruling prevent Ms. Hamilton or any other district attorney from utilizing the statute to prosecute the plaintiffs or any other individual, but it also resulted in the Kansas legislature's amending of the relevant language in the statute. As with other facial challenges to statutes which threaten speech and expressive activity, we allow such challenges "not primarily for the benefit of the litigant, but for the benefit of society--to prevent the statute from chilling the First Amendment rights of other parties not before the court." Secretary of State of Md. v. Joseph H. Munson Co., Inc., 467 U.S. 947, 958 (1984). While we doubt that the Kansas Funeral Picketing Act has wide applicability to members of the public other than the plaintiffs and their fellow protestors, such a subjective determination should not be the focus of our inquiry. Instead, we recognize that the plaintiffs successfully invalidated a state statute which resulted in legislative action to correct this constitutional error--an action which itself indicates a significant public interest in this case and the statute in question.

Based upon our analysis of the Farrar factors, we hold that each of these factors weighs in favor of a determination that while the plaintiffs' success in this case may have been limited, it was not merely technical or de minimus. Accordingly, we hold that the district court abused its discretion in not undertaking an analysis to determine what amount of attorney's fees would be reasonable in light of the plaintiffs' success in

13

challenging the Kansas Funeral Picketing Act. We therefore remand this case to the district court for a determination of the reasonable amount of attorney's fees.

In doing so, however, we note that the district court retains discretion in determining what constitutes a reasonable award in light of the plaintiffs' relative success in the underlying proceedings. See Jane L., 61 F.3d at 1511 (holding that on remand the district court should assess "the losses in light of the time necessarily devoted to the litigation as a whole and the general overall success of plaintiffs") (citing Hensley, 461 U.S. at 435-437). In addition, the district court will also have to determine the applicability of the rule of Kay v. Ehrler, 499 U.S. 432, 437-38 (1991) (holding that a pro se litigant who is also a lawyer may not be awarded attorney's fees under § 1988), to the lodestar calculus given that one of the plaintiffs--Margie J. Phelps--was both a plaintiff and co-counsel in the underlying case.

**CONCLUSION**

For the foregoing reasons, the district court's order denying the plaintiffs reasonable attorney's fees is reversed and the case is remanded for further proceedings.