**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 5, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MICHAEL L. ZINNA,

      Plaintiff–Appellant,

v.

JUDY CONGROVE, as personal
representative of the estate of James
Congrove, deceased,

      Defendant–Appellee.

No. 10-1482

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:05-CV-01016-RPM)**

---

Teresa L. Ashmore (Stephen Waters with her on the briefs), Robinson Waters &
O'Dorisio P.C., Denver, Colorado, for the Plaintiff-Appellant.

Patrick Tooley (Kevin M. Coates with him on the briefs), Dill Dill Carr Stonbraker &
Hutchings, Denver, Colorado, for the Defendant-Appellee.

---

Before **LUCERO**, **MCKAY**, and **TYMKOVICH**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

      Michael Zinna appeals the district court's attorneys' fee award following a

successful 42 U.S.C. § 1983 civil rights suit against James Congrove, a county official. On its consideration of the jury verdict favoring Zinna, the district court determined the damage award was nominal and the victory merely technical. It proceeded to award Zinna but $8,000 in attorneys' fees under § 1988— $1,000 for each day of an eight-day trial. In light of our jurisprudence applying Farrar v. Hobby, 506 U.S. 103, 116-22 (1992) (O'Connor, J., concurring), we conclude that that the district court's award was arbitrary, reverse, and remand. Jurisdiction is proper under 28 U.S.C. § 1291.

**I**

Zinna was affiliated with BJC Development Corporation ("BJC") in 2000 when a real estate transaction between BJC and Jefferson County, Colorado failed to materialize. The ensuing dispute was ongoing in 2003 when Zinna launched the website JeffcoExposed.com, and later, ColoradoExposed.com. These websites served as platforms through which Zinna reported on public meetings and speculated about corruption in Jefferson County government. Although his reporting was somewhat hyperbolic, Zinna uncovered several public scandals, including an incident of sexual harassment that resulted in the resignation of two county officials. At the height of his journalistic career, Zinna obtained press credentials and earned a reporting award from Westword, a Denver periodical. According to Zinna, his writing attracted as many as 100,000 visitors each month to his websites.

After the websites caught the attention of several Jefferson County Commissioners, including Congrove, Zinna became the target of a variety of antagonistic

-2-

conduct. County resources were directed toward research on Zinna's background, a private investigator was retained to report on Zinna, sheriff's officers began following Zinna, and a county commissioner muted Zinna's microphone at a public meeting. Zinna also suspected that the website ColoradoWackoExposed.com ("ColoradoWacko") was launched with the support of county officials. This website included a mugshot of Zinna, his criminal history, a list of civil judgments against him, a warning not to engage in business with him, and a note encouraging Zinna's girlfriend to "move on." Apparently to ensure that the information was received as intended, several of Zinna's friends and business associates were also sent anonymous packages containing paper copies of the materials posted on the ColoradoWacko website.

By the time ColoradoWacko was launched, Zinna had filed suit against a host of county officials under § 1983 seeking economic and punitive damages. In his complaint, Zinna alleged that he had been retaliated against for criticizing county officials in violation of the First Amendment. Following several pretrial motions, Congrove remained the only defendant in the case. At the pretrial conference, the action was further narrowed when the district court granted an in limine motion precluding Zinna from seeking certain economic damages, leading Zinna to withdraw his request for punitive damages. Zinna proceeded to trial on his retaliation claim seeking, declaratory relief, damages for emotional distress, and economic damages stemming from the demise of his radio and television career.

Following Zinna's case-in-chief, Congrove successfully moved for a directed

-3-

verdict on the remaining economic damages.  Zinna's request for a declaration that his rights were violated and damages based on emotional distress were thus the only issues submitted to the jury.

At close of argument, the jury was instructed to determine whether Congrove engaged in "unlawful conduct towards [Zinna] in retaliation or to interfere with his freedom of speech."  The jury was further instructed that "[a] public official has his own rights to the protection of the First Amendment and may respond to accusations . . . as long as he does not use his authority to punish . . . the other speaker." After reciting the elements of a constitutional retaliation claim, the court instructed the jury on damages:

> If you find in favor of Mr. Zinna, then you must award Mr. Zinna an amount of money that you believe will fairly and justly compensate Mr. Zinna for . . . any mental or emotional suffering that Mr. Zinna has experienced . . . .  If you return a verdict in plaintiff's favor, but nevertheless find that he has failed to meet his burden of proving that he suffered any damages that were caused by Mr. Congrove, you must award mr. [sic] Zinna "nominal damages" of one dollar ($1.00).

During deliberations, the jury inquired of the court when the First Amendment was adopted.  The court responded that the Bill of Rights was enacted in 1789 and ratified in 1791.  On receiving this information, the jury returned its verdict.  It found that Zinna "prove[d] by a preponderance of the evidence that . . . Congrove[] used his authority as a Jefferson County Commissioner to take adverse action against . . . Zinna in violation of the First Amendment."  $1,791 was awarded to Zinna as damages.

Zinna then sought approximately $503,000 in attorneys' fees under § 1988.  This, his counsel claimed, reflected the hours spent on the case multiplied by a reasonable

-4-

hourly rate (the "lodestar"). Counsel's request included fees incurred in litigating several of Zinna's damages theories that did not reach the jury. Choosing to ignore the records submitted by Zinna, the district court instead awarded him $8,000 in attorneys' fees. In a brief order explaining its decision, the district court found that the $1,791 jury award was nominal, and that several factors justified a reduced fee. Foremost, the court found, the "difference between the judgment recovered and the recovery sought . . . [justifies] a very substantial reduction of the fees claimed." Additionally, the court explained that Zinna's "personal animosity" and Congrove's right to respond to criticism under the First Amendment undermined the public purpose and value of the litigation. Based on these determinations, the court awarded what it declared the "reasonable cost of presenting this case to the jury," namely, $1,000 for each of eight days of trial. Zinna appeals the $8,000 award as unreasonable.

## II

We review the reasonableness of a district court's award of attorneys' fees under § 1988 for an abuse of discretion. Sinajini v. Bd. of Educ. of San Juan Sch. Dist., 233 F.3d 1236, 1239 (10th Cir. 2000). "However, we review the district court's statutory interpretation or legal analysis of the basis for the award de novo." Brown v. Gray, 227 F.3d 1278, 1297 (10th Cir. 2000).

Section 1988(b) codifies an exception to the "American Rule" in which each party ordinarily must pay its own attorneys' fees. Specifically, § 1988(b) creates a fee-shifting regime in which prevailing civil rights litigants can recoup the litigation costs stemming

from their successful claims.  The statute provides that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  Id.  Underlying this provision is the notion that a successful civil rights plaintiff serves "as a private attorney general, vindicating a policy that Congress considered of the highest priority."  Fox v. Vice, 131 S. Ct. 2205, 2213 (2011) (quotation omitted).

Despite the statute's grant of discretion, the Supreme Court has advised that "fees should be awarded [to successful § 1983 litigants] . . . unless special circumstances would render such an award unjust."  Kentucky v. Graham, 473 U.S. 159, 164 (1985) (citation omitted).  Accordingly, a "district court's discretion to deny fees to a prevailing plaintiff is quite narrow."  Dahlem ex rel. Dahlem v. Bd. of Educ. of Denver Pub. Schs., 901 F.2d 1508, 1514 (10th Cir. 1990) (quotation omitted).  Only certain circumstances warrant a significant reduction or outright denial of attorneys' fees to a prevailing civil rights litigant.  One such circumstance is when a plaintiff's victory is "merely technical or de minimis."  Phelps v. Hamilton, 120 F.3d 1126, 1131 (10th Cir. 1997).

In determining whether a party's success is merely technical, we consider the three factors announced in Justice O'Connor's concurrence to Farrar v. Hobby.  See Farrar, 506 U.S. at 116-22 (O'Connor, J., concurring); Phelps, 120 F.3d at 1131-33.  The first Farrar factor requires a court to look to the "degree of success obtained" by the plaintiffs.  Phelps, 120 F.3d at 1132.  Next, a court must consider "the extent to which the plaintiffs succeeded on their theory of liability."  Id.  The final factor takes into account the "public

-6-

purpose served by the plaintiffs' success." Id. Courts must consider and weigh all three factors, and no factor is dispositive. See Lippoldt v. Cole, 468 F.3d 1204, 1223 (10th Cir. 2006) (holding that a district court abused its discretion by not considering the second and third Farrar factors). Moreover, "application of the O'Connor factors d[oes] not undermine the general rule that prevailing parties should recover attorney's fees" absent special circumstances. Brandau v. Kansas, 168 F.3d 1179, 1182 (10th Cir. 1999) (quotation omitted).

## III

Each of the three Farrar factors was considered by the district court in concluding that Zinna's success on his First Amendment claim was de minimis, but little analysis or explanation was offered. We discourage such brevity in fee award orders. Cf. Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) ("It remains important . . . for the district court to provide a concise but clear explanation of its reasons for the fee award."). Even so, it is evident that the court incorrectly assessed the third Farrar factor. This error was significant, and skewed the analysis in such a way that Zinna was awarded an unreasonably low sum.

## A

The first Farrar factor is the "most critical factor," Phelps, 120 F.3d at 1132, but it is by no means determinative, Lippoldt, 468 F.3d at 1223. This factor requires consideration of the "difference between the judgment recovered and the recovery sought." Phelps, 120 F.3d at 1131. Although the district court appears to have

-7-

improperly considered earlier claims against defendants who were dismissed, it is clear that Zinna did not receive the full relief he sought. Zinna requested significant economic damages stemming from Congrove's unconstitutional conduct, and he received only $1,791 to compensate for his mental suffering. It appears that this award was not intended to be nominal. The jury was instructed that it should award $1 if it concluded nominal damages were appropriate, and chose to award a significantly higher sum. But in light of the substantial gap between the relief Zinna sought and the damages he received, this Farrar factor favors Congrove.

**B**

The second Farrar factor looks to the "significance of the legal issue on which the plaintiff claims to have prevailed." 506 U.S. at 121 (O'Connor, J., concurring). In contrast to the first, this factor "goes beyond the actual relief awarded to examine the extent to which the plaintiffs succeeded on their theory of liability." Phelps, 120 F.3d at 1132 (citation omitted). Even though Zinna did not receive economic damages, the jury specifically found that Congrove "used his authority . . . to take adverse action against Zinna in violation of the First Amendment." Based on this finding, it is evident that Zinna "succeeded on a significant issue in litigation which achieves some of the benefits he sought in bringing suit." Brandau, 168 F.3d at 1182. We thus agree with the district court's determination that the second Farrar factor favors Zinna.

**C**

-8-

The final Farrar factor considers whether the plaintiff's claim "accomplished some public goal." 506 U.S. at 121 (O'Connor, J., concurring). This factor acknowledges § 1988's purpose of ensuring the "vindication of important rights, even when large sums of money are not at stake." Farrar, 506 U.S. at 122 (O'Connor, J., concurring). A court thus must "examine[] whether the judgment vindicates important rights and deters future lawless conduct as opposed to merely occupying the time and energy of counsel, court, and client." Phelps, 120 F.3d at 1132 (quotation omitted). As a rule of thumb, the "more important the right at stake and the more egregious the violation the more likely it is that the victory serves a public purpose." Cartwright v. Stamper, 7 F.3d 106, 110 (7th Cir. 1993).

It is a "basic assumption of our political system that the press will often serve as an important restraint on government." Minneapolis Star & Tribune Co. v. Minnesota Com'r of Revenue, 460 U.S. 575, 585 (1983). The district court acknowledged the "paramount importance" of a "citizen's right to comment on the conduct of elected officials," especially those local leaders whose activities "are not often the subject of the established news media." Nevertheless, the court found that the third Farrar factor favored Congrove for several reasons. First, the court perceived the tone of Zinna's reporting as "vituperative [and] designed more to incite passion than to inform." Second, the court found that "personal animosity affects the third [Farrar] factor" because "[t]his case is much more a matter of a personal quarrel than a public exposure of misconduct." Third, the court concluded that "[t]here is a corresponding freedom of speech for public

officials to bring attention to those who attack them[, and] [m]uch of Mr. Congrove's conduct was in the exercise of that Freedom."

Although we are bound to show deference to the district court's determination under an abuse of discretion standard, we need not accept "a clearly erroneous finding of fact or conclusion of law." DG ex rel. Stricklin v. Devaughn, 594 F.3d 1188, 1194 (10th Cir. 2010). Looking to the record before us, we see scant support for the district court's vitriolic portrayal of Zinna's reporting. To the contrary, the facts indicate that the third Farrar factor comfortably favors Zinna.

Zinna may not have been engaged in high journalism, but we do not agree that his tone undermined the value of his work. Over the course of several years, Zinna reported on a plethora of local government issues to a sizable audience. In doing so, he performed a public service by encouraging transparency and accountability among officials. The importance of this service cannot be downplayed simply because it was not always performed in a tasteful manner. See N.Y. Times Co. v. United States, 403 U.S. 713, 723-24 (1971) (Douglas, J., concurring) ("The dominant purpose of the First Amendment was to prohibit the widespread practice of governmental suppression of embarrassing information.").

On our review of the expansive record, it also becomes apparent that even though Zinna's journalism may have been tainted by his personal conflict with Congrove, the overwhelming thrust of his work did not involve that issue. Looking to the archives of Zinna's articles in the record, only a small fraction appears to implicate the BJC deal or

Congrove individually.  It is not evident the remainder were directly or indirectly related.  Accordingly, there was little basis for relying on personal animosity as decisive in analyzing the third Farrar factor.

More significantly, Congrove's success before the jury on his First Amendment claim was ignored by the district court.  The jury was instructed that "[a] public official has his own rights to the protection of the First Amendment and may respond to accusations . . . as long as he does not use his authority to punish . . . the other speaker."  On this instruction, the jury specifically found that Congrove abused his authority and retaliated against Zinna.  Given this determination, Congrove's speech rights should have been given less—if any—weight in the Farrar calculus.  The jury spoke on this issue, and the district court erred by reweighing the matter and reaching a contrary result without explanation or evidence.

Tallying the three Farrar factors, one favors Congrove, two favor Zinna.  The first factor carries more weight than the other two, Phelps, 120 F.3d at 1132, but is not itself sufficient to support the denial of fees to a victorious plaintiff.  Lippoldt, 468 F.3d at 1223.  Because the two remaining factors support the conclusion that Zinna's victory was not merely technical, we hold that Zinna is entitled to the reasonable attorneys' fees related to his successful First Amendment claim.

**IV**

Having concluded that Zinna is entitled to reasonable attorneys' fees, we turn our attention to the district court's award.  "A court will generally determine what fee is

reasonable by first calculating the lodestar-the total number of hours reasonably expended multiplied by a reasonable hourly rate-and then adjust the lodestar upward or downward to account for the particularities of the suit and its outcome." Phelps, 120 F.3d at 1131. After undertaking the Farrar analysis, the district court found that $8,000 represented the "reasonable cost of presenting this case to the jury." It is not enough, however, for a court to simply "eyeball a fee request and cut it down by an arbitrary percentage." Browder v. City of Moab, 427 F.3d 717, 723 (10th Cir. 2005) (quotation omitted). The $8,000 award at issue was not based on the lodestar or Zinna's records. Rather, the court arbitrarily assumed that this amount was sufficient without reference to the record. This leaves us with no alternative but to conclude that an abuse of discretion resulted, requiring us to remand for the district court to determine—based on the facts and the timesheets submitted by Zinna—what work warrants reimbursement.[1]

## V

The district court's fee order is **VACATED** and the case is **REMANDED** for

---

[1] Despite our holding that the fee award was arbitrary, the district court is free to award significantly less than the requested fees provided that it engages in the appropriate analysis. Zinna is entitled to the reasonable fees associated with his First Amendment claim, but he is clearly not entitled to $503,000. That figure includes costs for work related to Zinna's failed damages request and for litigation surrounding claims in which Zinna did not succeed. As the Supreme Court explained in Fox v. Vice, a "fee award . . . should not reimburse the plaintiff for work performed on claims that bore no relation to the grant of relief." 131 S. Ct. at 2214.

further proceedings consistent with this opinion.[2]

---

[2] After the case was argued and submitted, the court was informed of Congrove's death. Under Fed. R. App. P. 43(a), we requested information regarding Congrove's successor or substitute, and were informed by counsel that Judy Congrove is the personal representative of Congrove's estate. Zinna's counsel subsequently moved to substitute Judy Congrove as the Defendant-Appellee for the purposes of this appeal. We grant this motion, and amend the caption accordingly. The parties may address any issues regarding this substitution and the survival of Zinna's claims before the district court.

10-1482, <u>Zinna v. Congrove</u>
J. **TYMKOVICH**, concurring

I agree with the district court's assessment of the three factors set forth in <u>Farrar v.</u>

<u>Hobby</u>, 506 U.S. 103, 116–22 (1992).  The district court concluded (1) the damage award

of $1791 was symbolic and therefore nominal, reflecting the date of the ratification of the

First Amendment, (2) the plaintiff prevailed on a significant legal issue, and (3) the

litigation was mainly a vehicle for personal vindication and not the public good.  I thus

disagree with the majority that the third factor favors Zinna.

But I agree with the majority the district court did not adequately explain the basis

for the amount of attorneys' fee it awarded.  I therefore agree a remand is warranted.