**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 7, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MARIAN G. KERNER; RAMONA J.
LOPEZ, on behalf of themselves and all
others similarly situated,

      Plaintiffs - Appellants,

v.

CITY AND COUNTY OF DENVER,
a municipal corporation,

      Defendant - Appellee.

No. 17-1222
(D.C. No. 1:11-CV-00256-MSK-KMT)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **McKAY**, and **BALDOCK**, Circuit Judges.
_____

This appeal arises out of a class action law suit brought by Marian G. Kerner

and Ramona J. Lopez, on behalf of themselves and all others similarly situated,

against the City and County of Denver. Plaintiffs' complaint alleged that Denver's

use of a specific type of pre-employment screening test had a disparate impact on

minority applicants. After five years of litigation culminating in a bench trial, the

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

district court agreed with plaintiffs. The amount of damages was a hotly contested issue with plaintiffs initially seeking $18 million in damages. After considering the trial record and post-trial supplemental briefing on damages, the court entered judgment in favor of plaintiffs and awarded them $1,674,807 in damages.

Because they were the prevailing party, plaintiffs filed a motion for attorney's fees and expenses. They sought $1,550,195 in attorney's fees and $162,120.99 in expenses (the bulk of which were expert fees). Denver objected to plaintiffs' motion, arguing that both the hourly rates and the number of hours for plaintiffs' counsel should be reduced. It created a table reflecting a proposed reduction in rates and hours that, when calculated out, would lead to a total award of $894,443 for attorney's fees. Denver did not contest the $140,358.00 in expenses plaintiffs sought for their main expert, but it did object to the expenses for two other experts.

The district court declined to award plaintiffs the full amount of fees and expenses they had requested; instead, the court awarded them $894,443 in fees (the amount Denver proposed) and $97,494.99 in expenses. Plaintiffs now appeal from the district court's decision on fees and expenses. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we reverse in part and affirm in part.

I. Discussion

We review for abuse of discretion the district court's award of attorney's fees and expenses, but we review de novo the court's legal analysis underpinning the award. *Brandau v. Kansas*, 168 F.3d 1179, 1181 (10th Cir. 1999). Plaintiffs assert that the district court abused its discretion by failing to conduct a proper lodestar

analysis when determining the amount for their attorney's fee award. Plaintiffs further assert that the district court abused its discretion when it reduced the amount of plaintiffs' expert fees.

A. *Lodestar Analysis*

The "lodestar method" is the accepted analysis for determining a reasonable fee amount for a prevailing party in federal court. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 801-02 (2002). Using this method, courts multiply the reasonable number of hours expended on the litigation by a reasonable hourly rate to determine the amount of a reasonable fee. *See id*. at 802.

The district court explained it would be calculating the fee award using the familiar lodestar analysis, and it began with a determination of the reasonable hourly rate. Denver had objected to the rates for plaintiffs' lead and assistant trial counsel. It had proposed a reduction in rates from $500 to $400 an hour for lead counsel and from $375 to $250 an hour for assistant counsel. The district court rejected Denver's proposed reduction in rates and found "that the rates claimed by the Plaintiffs are, on the record presented here, reasonable." Aplt. App., Vol. 5 at 1160.

The district court next turned to the question of the reasonableness of the hours plaintiffs' counsel spent on the litigation. Denver had asserted that the number of hours spent by plaintiffs' counsel was excessive for various reasons. It therefore proposed that the total number of hours billed by plaintiffs' lead and assistant counsel be reduced by thirty percent. The district court agreed with Denver that the total number of hours claimed by plaintiffs' counsel was unreasonable and that a

3

substantial reduction was warranted. The court then stated: "Without fixing a specific figure of the number of hours reasonably expended in this case, the Court exercises its discretion to defer to those admitted as reasonable by Denver - $894,443." *Id*. at 1163.

We first note that the district court's concluding sentence referenced above is ambiguous and is subject to at least two different interpretations. Under either interpretation, however, the district court abused its discretion and we must reverse and remand for further proceedings.

One way to read the sentence is that the district court was adopting the number of *hours* Denver conceded were reasonable— "Without fixing a specific number of hours reasonably expended in this case, the Court exercises its discretion to defer to those [hours] admitted as reasonable by Denver - $894,443." *Id*. Relying on this interpretation, plaintiffs argue that the district court erred by failing to use the rates it had previously determined were reasonable to calculate the lodestar figure.

If the court intended to adopt the number of hours Denver proposed, we agree with plaintiffs that the court erred in calculating the lodestar figure. Multiplying the rates the district court found were reasonable ($500 for K. Padilla, $375 for J. Padilla, and $150 for L. Moya) by the number of hours Denver proposed were reasonable (1,651.72 for K. Padilla, 516.04 for J. Padilla, and 698.3 for L. Moya), results in a total lodestar figure of $1,124,120—a difference of $229,677 from the lodestar figure of $894,443 the district court adopted. The significant difference in lodestar figures is because Denver's proposed figure of $894,443 was calculated

4

based on both a thirty percent reduction in hours *and* a reduction in the hourly rate. *See id.*, Vol. 4 at 1031-32 (requesting that the district court "reduce Plaintiffs' hourly rate to $400/hour for Mr. Kenneth Padilla and $250/hour for Mr. Joaquin Padilla, and further reduce the number of hours billed by Plaintiffs' counsel by thirty percent (30%) for total fees of no more than $894,443").

A second way to read the sentence is that the district court was adopting the total amount of *fees* Denver admitted was reasonable—"Without fixing a specific number of hours reasonably expended in this case, the Court exercises its discretion to defer to those [fees] admitted as reasonable by Denver - $894,443." *Id.*, Vol. 5 at 1163. Denver relies on this interpretation to argue that the district court did not err when it found the lodestar figure to be the amount of fees Denver had conceded were reasonable. Denver asserts the district court properly exercised its discretion to award plaintiffs the unchallenged portion of the fees claimed. We disagree.

Denver fails to provide legal authority for the proposition that a district court can do what the court may have done here—begin the lodestar analysis by first determining the reasonable rate, but then abdicate its responsibility to make the second determination of the reasonable number of hours and forego any independent calculation of the lodestar figure by adopting the lodestar figure that the losing party claims is reasonable. Denver cites to *Robinson v. City of Edmond*, 160 F.3d 1275, 1286 (10th Cir. 1998), for support, but that case simply noted that a district court has discretion to award an amount that is *below* the amount that the losing party left unchallenged. Neither the *Robinson* decision nor a reasonable extension of that

decision supports the conclusion that a district court may avoid performing its own lodestar analysis (or perform only part of the lodestar analysis) and then adopt the fee amount that the losing party left unchallenged.

If we rely on Denver's interpretation of the district court's ruling, then the district court abused its discretion by failing to conduct a full lodestar analysis. Once the district court determined that the rates were reasonable, it needed to continue the analysis by making a determination about the reasonable number of hours and then calculate the final lodestar figure.

Although we decline to resolve plaintiffs' other arguments regarding alleged errors in the court's lodestar analysis because those arguments are dependent on our accepting plaintiffs' interpretation of the district court's ambiguous statement, we are compelled to correct one of plaintiffs' assertions because it may be relevant to the proceedings on remand. Plaintiffs contend "that a proportional reduction [of hours] is only permissible when the plaintiff achieves only a *de minimis* victory," citing to *Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997). Aplt. Br. at 32-33. But there is no such bright-line rule in this circuit.

*Phelps* did not involve a proportional reduction of hours nor did it discuss the propriety of a proportional reduction in hours. In *Phelps*, we reversed the district court's decision not to award *any* fees to the prevailing parties. 120 F.3d at 1131, 1133. Moreover, in *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1203 (10th Cir. 1986)—a case plaintiffs relied on in their district court briefing on attorney's fees, *see* Aplt. App., Vol. 4 at 1068—we expressly held that "[a] general reduction of

6

hours claimed in order to achieve what the court determines to be a reasonable number is not an erroneous method, so long as there is sufficient reason for its use."

We conclude that the district court's decision regarding the reasonable-hours determination is ambiguous and—under either of the two interpretations proposed by the parties—the district court abused its discretion in the way it conducted its lodestar analysis. Accordingly, we must remand to the district court to clarify its decision and redo its lodestar analysis.

B. *Reduction of Expert Fees*

Plaintiffs also contend that the district court abused its discretion in reducing the amount of expenses related to their expert witness fees. Plaintiffs sought expert fees in the amount of $140,358 for their main expert, Dr. Robert Bardwell. They also sought fees for two additional experts: $10,000 for Dr. Alan Salzberg and $8,977 for Lari Masten. The district court reduced by thirty-three percent the amount of fees for Dr. Bardwell for a total of $92,400. The court considered the fees for the other two experts together and reduced that amount from $18,977 to $5,000.

Plaintiffs assert that the district court's decision on expert fees was flawed because the court "must enumerate a basis for making the substantial reduction it made to [the expert fees]." Aplt. Br. at 34. But the district court did explain its reasons for reducing the amount of expert fees.

The district court noted that Dr. Bardwell initially presented a calculation that the damages in this case totaled $18 million. Denver's expert, Dr. Charles Mullins, then presented his damages calculation, which was significantly lower. Plaintiffs

7

called Dr. Bardwell in rebuttal, but in his rebuttal testimony, he abandoned his original damage model, offered a new set of assumptions and calculations that adopted some of Dr. Mullins' approach, and dropped his damages calculation by more than half—from $18 million to $7-8 million.

The court found "that the full amount [of expert fees] claimed by Dr. Bardwell is unreasonable, especially in light of his mid-trial decision to abandon the damage model he had previously advocated." Aplt. App., Vol. 5 at 1164. As the court explained: "Even if the change was in response to Dr. Mullins['] testimony, both witnesses were fully familiar with each other's methods, assumptions and calculations long before trial. This is not a situation where factual evidence caused a change in an expert opinion." *Id*. The court further noted that the dispute between the parties' main experts related to different methodologies for computing damages and that "[u]ltimately, Dr. Bardwell substantially adopted the methodological model used by Dr. Mullins (with some tweaks)." *Id*. at 1165. Because there was "no explanation as to why this change could not have occurred at some point during the five year pretrial period," the court concluded that the change "could have been made prior to trial, which would have saved expense to both parties." *Id*. These circumstances led the court to reduce Dr. Bardwell's fees by thirty-three percent to $92,400—an amount it determined was "reasonable for the portion of Dr. Bardwell's work that was useful in the case." *Id*. With regard to the other two experts, the district court reduced their fees after "agree[ing] with Denver that their testimony

8

was largely cumulative of Dr. Bardwell's testimony, and thus was largely unnecessary." *Id*.

We see no abuse of discretion in the district court's award of expenses related to plaintiffs' expert fees. The district court provided a sufficient explanation for its determination that a reduction in plaintiffs' expert fees was warranted.

II. Conclusion

For the foregoing reasons, we reverse in part and affirm in part the district court's opinion and order awarding attorney's fees and expenses. We remand to the district court for further proceedings consistent with this decision.

Entered for the Court


Monroe G. McKay
Circuit Judge