**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 14, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

GERMAN WILMER SAENZ MENCIA,

    Plaintiff Counterclaim Defendant - Appellant,

and

CIRO CAMAYO CANO,

    Plaintiff Counterclaim Defendant,

v.

PHILLIP E. ALLRED; CHANCE ALLRED; DUSTIN ALLRED; PRESTON ALLRED, d/b/a Allred Land & Livestock,

    Defendants Counterclaim Plaintiffs - Appellees,

and

WESTERN RANGE ASSOCIATION,

    Defendant.
_____

COLORADO LEGAL SERVICES; CALIFORNIA RURAL LEGAL ASSISTANCE, INC.; UNITED STATES SECRETARY OF LABOR,

    Amici Curiae.

No. 14-4047

_____

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:11-CV-00200-CW)**
_____

Edward Tuddenham, New York, New York (Jaqualin Friend Peterson and Elizabeth M. Peck of Peck Peterson LLP, Salt Lake City, Utah, with him on the briefs), for Plaintiff Counterclaim Defendant–Appellant.

Judith D. Wolferts of Snow, Christensen & Martineau, Salt Lake City, Utah, for Defendants Counterclaimants–Appellees.

Jenifer C. Rodriguez and Dermot Lynch of Colorado Legal Services, Denver, Colorado; Cynthia Rice of California Rural Legal Assistance, Oakland, California, filed an amicus curiae brief for Colorado Legal Services and California Rural Legal Assistance.

Andrea Lindemann Gilliam (M. Patricia Smith, Solicitor of Labor; Jennifer S. Brand, Assistant Solicitor; Paul L. Frieden, Counsel for Appellate Litigation, with her on the brief), U.S. Department of Labor, Washington, D.C., for Amicus Curiae United States Secretary of Labor.
_____

Before **KELLY**, **McKAY**, and **PHILLIPS**, Circuit Judges.
_____

**McKAY**, Circuit Judge.
_____

Mr. Saenz, a citizen of Peru, came to Utah to work for the Allreds' sheep ranch. His work was authorized by an H-2A sheepherding visa, and he was paid the minimum wage for H-2A sheepherders: $750 per month plus food and lodging.

He now claims this pay was inadequate. He argues the work he performed did not qualify as sheepherding and the monthly wage for sheepherders did not apply. Instead, he argues, he was entitled to the hourly wage for H-2A ranch hands, which he now seeks to recover in contract and quantum meruit. Additionally, he argues the

- 2 -

work he performed did not qualify for the "range production of livestock" exemption to the Fair Labor Standards Act minimum wage, 29 U.S.C. § 213(a)(6)(E), and he therefore asserts a minimum wage claim against the Allreds under the FLSA.

The district court rejected these claims, denied Mr. Saenz's summary judgment motion, and granted summary judgment to the Allreds. Its decision rested on two independent grounds. First, it ruled that Mr. Saenz's claims were estopped because he did not object to his non-sheepherding work while the Allreds could have done something about it. Second, it ruled that more than half of Mr. Saenz's work qualified as "range production of livestock," and Mr. Saenz was accordingly exempt from the FLSA minimum wage and the H-2A wage for ranch hands.

Mr. Saenz now appeals. We review the summary judgment rulings de novo, *see Day v. Bond*, 500 F.3d 1127, 1131 (10th Cir. 2007), and we reverse.

We first address the key substantive question: was Mr. Saenz a sheepherder? In more precise terms, did his work fall within the H-2A definition of sheepherding and the FLSA's "range production of livestock" exemption?

Of the two, the "range production of livestock" exemption is better defined. The regulations governing this exemption ask three basic questions to determine whether an employee qualifies: (1) what are the employee's work duties, (2) where does the employee work, and (3) how much time does the employee spend doing non-qualifying work?

As to work duties, the FLSA regulations establish that exempt employees must be engaged in the "production of livestock." 29 C.F.R. § 780.324(a)(4). They define

- 3 -

"production of livestock" to include "actively taking care of the animals or standing by in readiness for that purpose," as well as "immediately incidental duties [like] inspecting and repairing fences, wells, and windmills." *Id.* § 780.327. But not all production of livestock qualifies: an employee is exempt only if his "duty necessitates his constant attendance on the range, on a standby basis, for such periods of time so as to make the computation of hours worked extremely difficult." *Id.* § 780.329(a). Even if a worker is on the range, engaged in the production of livestock, he will not qualify for the exemption if the character of his work allows easy recording of his hours. *Hodgson v. Elk Garden Corp.*, 482 F.2d 529, 531 (4th Cir. 1973). The correct sort of work—the sort of work that makes hours difficult to calculate—is described as "constant surveillance of livestock that graze and reproduce on range lands." 29 C.F.R. § 780.329(c).

As to the location of work, exempt employees must work "on the range." "Range" is defined as "land that is not cultivated"—typically, "land that is not suitable for cultivation"—but which "produces native forage for animal consumption." *Id.* § 780.326. It is a place where animals graze, not a place where they are fed: "this exemption was not intended to apply to feed lots." *Id.* § 780.329(c). Finally, because of the requirement that hours be difficult to calculate, "exempt work must be performed away from the 'headquarters,'" *id.* § 780.329(b), and not in "any area where the stock involved would be near headquarters," *id.* § 780.329(c).

Finally, as to the time spent working, the regulations require that exempt employees spend "the major part, or over 50 percent," of their time on the range, producing livestock under circumstances that make the employees' hours difficult to calculate. *Id.* § 780.325(a). So long as they meet this requirement, they "may perform some activities not directly related to the range production of livestock, such as putting up hay or constructing dams or digging irrigation ditches." *Id.* § 780.325(b). But if such duties take up more than half of an employee's time, he is no longer exempt.

The H-2A provisions in place during Mr. Saenz's term of employment—known as the Special Procedures[1]—use different language but have a similar effect.

---

[1] The Administrator of the Office of Foreign Labor Certification has authority to establish so-called "special procedures . . . for the handling of applications for sheepherders in the Western States," as well as a special "monthly, weekly, or bi-weekly" minimum wage for workers engaged in "the range production of sheep or other livestock." 20 C.F.R. § 655.1293(b) (2008). The Special Procedures in effect during Mr. Saenz's employment were announced in a document entitled "Special Procedures: Labor Certification Process for Sheepherders and Goatherders under the H-2A Program," issued as an attachment to the Department of Labor's Field Memorandum No. 24-01. Both documents have been included in the record on appeal and can be accessed online at http://www.foreignlaborcert.doleta.gov/fm/fm_24-01.htm.

A later version of the Special Procedures has been successfully challenged in the D.C. Circuit, which ruled that the Special Procedures should have been promulgated through notice-and-comment rulemaking instead of a guidance letter. *Mendoza v. Perez*, 754 F.3d 1002, 1025 (D.C. Cir. 2014). The reasons for the D.C. Circuit's ruling appear equally applicable to the 2001 Special Procedures in effect during Mr. Saenz's employment. However, on remand from the D.C. Circuit, the district court left the Special Procedures in place until the notice-and-comment process could be completed. *Mendoza v. Perez*, 72 F. Supp. 3d 168, 175 (D.D.C. 2014). No one before us disputes that the 2001 Special Procedures are controlling in this case, and we will treat them as such.

Specifically, they put similar restrictions on employees' work duties, on the location of their work, and on the time they can spend doing non-qualifying work.

As to employees' work duties, the Special Procedures include the following "standard job description" for sheepherders:

> Attends sheep and/or goat flock grazing on range or pasture: Herds flock and rounds up strays using trained dogs. Beds down flock near evening campsite. Guards flock from predatory animals and from eating poisonous plants. May examine animals for signs of illness and administer vaccines, medications, and insecticides according to instructions. May assist in lambing, docking and shearing. May feed animals supplementary feed. May perform other farm or ranch chores related to the production and husbandry of sheep and/or goats on an incidental basis.

Special Procedures, *supra* note 1, at 1. While more detailed than the FLSA's definition of "production of livestock," this description suggests a similar sort of work: attending livestock while they graze, caring for them in various ways as the need arises, and doing other livestock-related work on the side. Unlike the FLSA regulations, the Special Procedures do not explicitly require that a sheepherder's hours must be difficult to compute. However, the regulation they are based on describes sheepherders as lacking "a reasonably regular workday or workweek," 29 C.F.R. § 655.1293 (2008), and the Special Procedures themselves require sheepherders to be "on call for up to 24 hours per day, 7 days per week," Special Procedures, *supra* note 1, at 2.

As to the location of work, the Special Procedures expect sheepherders to work "on range or pasture." The Special Procedures do not expressly define the phrase "range or pasture," but the document and the accompanying field

- 6 -

memorandum suggest that "range or pasture" and "range" from the FLSA regulations are similar in several respects. Most importantly, "range or pasture" is a place where animals graze, not a place where they subsist primarily on hay or other feed. Further, according to the Field Memorandum published with the Special Procedures, one of sheepherders' duties is "grazing herds of sheep in *isolated* mountainous terrain." Field Memorandum, *supra* note 1, at 1 (emphasis added). That sheepherders work in "isolated" places is confirmed by the Special Procedures themselves, which speak of sheepherders as needing "to use pack and saddle horses to reach [the] range." Special Procedures, *supra* note 1, at 2.

Finally, as to the amount of non-qualifying work, the Special Procedures do not explicitly set a 50% limit like the FLSA regulations. But they do distinguish between actual sheepherding—attending, herding, and caring for a flock—and, on the other hand, "farm or ranch chores related to the production and husbandry of sheep," which are permitted only "on an incidental basis." *Id.* at 1. The words "incidental basis" persuade us that ranch chores must be a relatively small part of the sheepherder's duties, probably much less than 50% of the sheepherder's time but certainly no more than 50%. A person who drives sheep trucks 51% of the time, and herds sheep during the other 49%, does not drive trucks "on an incidental basis" and cannot be called a sheepherder under the Special Procedures.

In short, both the FLSA and the Special Procedures require employees to spend more than half their time raising sheep in a remote location where the sheep

can graze. Applying this standard to the record, we conclude there is no plausible reading of the evidence under which Mr. Saenz was a sheepherder.

Admittedly, much of Mr. Saenz's work was work a sheepherder might do on occasion, which appears to have been the district court's reason for ruling him a sheepherder. The court relied on one of Mr. Saenz's interrogatory responses, in which Mr. Saenz listed his duties he considered outside a sheepherder's job description. Calculating that these duties did not take up more than 50% of Mr. Saenz's work time, the court concluded that, by his own admission, most of Mr. Saenz's duties fell within a sheepherder's job description.

But, as the above discussion makes clear, neither the FLSA exemption nor the Special Procedures are satisfied simply because most of an employee's duties fall within a sheepherder's job description. To assume they are, and to rule Mr. Saenz a sheepherder on that basis, is to misapply the relevant provisions in at least three ways.

The first of these is location. Both the FLSA regulations and the Special Procedures require sheepherders to work in remote locations where animals graze. Yet most of Mr. Saenz's work was anything but remote: he usually worked in the immediate vicinity of the ranch headquarters, close enough that the Allreds could see what he was doing and ask him to come help with odd jobs when they needed him. Further, the sheep Mr. Saenz worked with at the ranch did not graze: Mr. Saenz fed

them hay. We therefore conclude that the land near the headquarters, where Mr. Saenz did a majority of his work, was not range for either FLSA or H-2A purposes.[2]

The second problem with the district court's reasoning is that it did not account for the ease with which Mr. Saenz's hours could have been computed.[3] Indeed, in a rough way, it seems the Allreds did compute his hours: Phillip and Chance Allred both testified Mr. Saenz ordinarily worked around eight hours per day, not including lunch, while Preston Allred testified Mr. Saenz worked eight to ten hours per day. These numbers' accuracy is not important for present purposes; what matters is that if Mr. Saenz had been a sheepherder, the Allreds would not have been able to make such tidy estimates at all. The entire reason for the FLSA's "range production of livestock" exemption is that cowboys, sheepherders, and goatherders do not have clear start and stop times but instead work off and on, "on a standby basis, for such periods of time so as to make the computation of hours worked extremely difficult." 29 C.F.R. § 780.329(a).

The third and final problem is that the district court did not consider the Special Procedures' limits on work incidental to sheepherding. A great deal of Mr. Saenz's work was incidental to sheepherding: cleaning out sheep trucks, taking care

---

[2] We note that at least one of the Allreds seems to agree their ranch was not range: when speaking about work that Mr. Saenz did away from the ranch, Chance Allred said, "We had him *come to the range* with us." (App. at 487 (emphasis added).)

[3] The Allreds' counsel argues Mr. Saenz's hours could not have been calculated because he was free to take breaks in his trailer whenever he wished. But she does not support this claim with a record citation, and Mr. Saenz testified he never took such breaks.

of sheepdogs and horses, weeding alfalfa fields that produced hay for the sheep, and so on. None of this is inappropriate work for an H-2A sheepherder, but it is not actually sheepherding. Because Mr. Saenz spent much more time doing this sort of work than actually caring for sheep on the range, it cannot be said he performed ranch chores only "on an incidental basis" as the Special Procedures require.

In conclusion, under the undisputed facts, Mr. Saenz spent a large majority of his time working away from the range, supervised by superiors who could have recorded his hours, performing duties that were often incidental to sheepherding but were not sheepherding themselves. He was a ranch hand, not a sheepherder, and the FLSA exemption and H-2A Special Procedures do not apply.

Having concluded Mr. Saenz was not a sheepherder, we now ask whether his claims are estopped. In ruling they are, the district court relied on three circuit court cases in which employees failed to report hours, were not compensated for the unreported hours, and later sued their employers for back pay. *See White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 876–77 (6th Cir. 2012); *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981); *Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327 (5th Cir. 1972). In each case the suit failed because the employee's conduct "prevent[ed] the employer from knowing its obligation to compensate the employee and thwart[ed] the employer's ability to comply with the FLSA." *White,* 699 F.3d at 876.

The district court concluded that the same principle should bar Mr. Saenz from bringing the current lawsuit. While employed by the Allreds, Mr. Saenz never

complained he was spending too much time on non-sheepherding work. Further, after eleven months of work, Mr. Saenz renewed his original contract, plainly signaling he was satisfied with his duties. Under such circumstances, the district court reasoned, the Allreds had no way to know Mr. Saenz was "working too many hours on non-exempt work." (App. at 307.) Mr. Saenz thus "deprived [the Allreds] of the opportunity to mitigate any possible damages by either addressing Saenz's alleged grievances . . . or terminating Saenz's employment." The district court therefore concluded that he should be estopped like the plaintiffs in the three circuit court cases. (App. at 306–07.)

Despite its surface plausibility, however, the district court's analogy does not support the use of equitable estoppel in this case.

This is clearest where Mr. Saenz's FLSA claim is concerned. As the Second Circuit recognized more than fifty years ago, the use of equitable estoppel in FLSA wage claims is limited because such claims "lie[] in an area where agreements and other acts that would normally have controlling legal significance are overcome by Congressional policy." *Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 946 (2d Cir. 1959). Consequently, the Allreds had no right to rely on Mr. Saenz's failure to complain about his work, or even on his decision to renew his contract. Even if he had signed a fresh contract every morning, representing in each one that his monthly wage was adequate, he could still sue the Allreds for the FLSA minimum wage. *See Marshall v. Quik-Trip Corp.*, 672 F.2d 801, 806–07 (10th Cir. 1982) (holding that, even if employees voluntarily sign receipts falsely stating they have been paid back

- 11 -

wages, they are still entitled to recover any minimum wage they have not actually been paid).  The right to the FLSA minimum wage cannot be waived.  *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981).

The cases the district court relied on are not to the contrary.  The Sixth and Ninth Circuit cases, far from endorsing the general application of equitable estoppel to FLSA claims, do not apply equitable estoppel at all.  Instead, they are based on the text of the FLSA, which generally holds employers liable only when they have "suffer[ed] or permit[ed]" the work for which their employees seek compensation.  *Forrester*, 646 F.2d at 414 (quoting 29 U.S.C. § 203(g)); *see also White*, 699 F.3d at 878 ("Work not requested but suffered or permitted is work time." (quoting 29 C.F.R. § 785.11)).  The Fifth Circuit case did apply equitable estoppel, but it did so only because the employer neither knew nor should have known about the hours of work the employee had concealed.  *Brumbelow*, 462 F.2d at 1327.  Thus, although the Fifth Circuit case used the words "equitable estoppel" rather than the statutory language of "suffer[ed] or permit[ted]," it dealt—like the Sixth and Ninth Circuit cases—with a situation in which the employer had not suffered or permitted the relevant work and therefore had not violated the FLSA.

The question, then, is whether the Allreds suffered or permitted Mr. Saenz's work, which depends on the further question of whether they knew or should have known what he was doing.  Seeking an answer to this question in the record, we find no basis for the district court's conclusion that Mr. Saenz prevented the Allreds from "know[ing] that Saenz was supposedly working too many hours on non-exempt

work." (App. at 307.) As the Allreds' own depositions make clear, they knew how long Mr. Saenz worked, where he worked, and what he was doing.

But even if they had not known, they should have known. They were, after all, his employers: they gave him his assignments, supervised him, and accepted the benefit of his labor. Moreover, they were not even ordinary employers: they were the employers of a dozen H-2A sheepherders, and they had procured the H-2A visas by telling federal agencies that their sheepherders would "attend[]" a "flock on ranges or pasture" (App. at 585) and "work and live in remote locations more than 50% of the contract period." (App. at 601.) They were thus aware that the legality of employing Mr. Saenz depended on the nature and location of his duties, and, consequently, they had even more than ordinary cause to pay attention to what Mr. Saenz was doing.

We thus conclude the Allreds had both actual and constructive knowledge of the nature and location of Mr. Saenz's work. We accordingly reject their equitable estoppel defense to Mr. Saenz's FLSA claim.

Whether equitable estoppel applies to the H-2A–based claims is less clear. Mr. Saenz and the amici argue that the H-2A wage for ranch hands may not be waived any more than the FLSA minimum wage. After all, they argue, the H-2A wage for ranch hands was established not for the benefit of the H-2A ranch hands themselves but for the benefit of the domestic ranch hands who compete with them. Thus, they argue, allowing H-2A ranch hands to waive the H-2A wage would allow them to undercut the wages demanded by domestic ranch hands and defeat the purpose of the H-2A wage.

- 13 -

This is all undoubtedly true, so far as it goes: clearly an employer may not legally lower its wages below the applicable H-2A wage merely because its H-2A guest workers are willing to work for less. But Mr. Saenz does not assert a cause of action under the H-2A regulations; instead, he seeks to recover the H-2A wage in contract or in quantum meruit. Contract and quantum meruit are state law claims, and, in the absence of federal preemption, whether they are barred by equitable estoppel is a question of state law.

Fortunately, we do not need to address preemption or speculate as to whether the Utah Supreme Court would apply equitable estoppel to contract or quantum meruit claims based on the H-2A regulations. We can avoid these issues because, even if equitable estoppel does apply, the elements of equitable estoppel are plainly not satisfied in this case.

Under Utah law, a party asserting equitable estoppel must show (among other things) that he relied on the other party's "statement, admission, act, or failure to act," and, further, that his reliance was "reasonable." *Salt Lake City Corp. v. Big Ditch Irrigation Co.*, 258 P.3d 539, 548 (Utah 2011). As to the facts of Mr. Saenz's employment, the Allreds cannot claim to have relied on Mr. Saenz: they knew what his work duties were and where he performed them. As to the legal significance of the facts—that is, as to whether Mr. Saenz's work constituted sheepherding—any reliance on Mr. Saenz was not reasonable. The Allreds, not Mr. Saenz, were in the business of importing guest labor under the H-2A program. The Allreds, not Mr. Saenz, had easy access to lawyers who could have told them the difference between

- 14 -

sheepherders and ranch hands. Utah law does not apply equitable estoppel "in favor of one who has knowledge of the essential facts or who has convenient and available means of obtaining such knowledge." *Morgan v. Bd. of State Lands*, 549 P.2d 695, 697 n.4 (Utah 1976). The Allreds had both. Their equitable estoppel defense fails.

Having addressed the district court's reasoning, we must now turn to the six alternative grounds on which the Allreds have asked us to affirm.

First, contrary to the Allreds' argument, Mr. Saenz was "engaged . . . in the production of goods for commerce," so the FLSA clearly applies. 29 U.S.C. § 206(a); *see also* 29 C.F.R. § 776.21(a) ("The fact that goods do move in interstate or foreign commerce is strong evidence that the employer intended, hoped, expected, or had reason to believe that they would so move.").

Second, again contrary to the Allreds' argument, the Department of Labor's "Special Procedures" for H-2A sheepherders do not create an exemption from the FLSA minimum wage. "[T]he FLSA applies independently of the H-2A requirements and imposes obligations on employers regarding payment of wages." 20 C.F.R. § 655.122(h)(1). Indeed, the Special Procedures explicitly require employers to pay (at least) the FLSA minimum wage if it applies. Special Procedures, *supra* note 1, at 3.

Third, the Allreds argue Mr. Saenz cannot recover the H-2A wage in contract because he failed to plead that cause of action adequately in his complaint. They are incorrect. Mr. Saenz's complaint alleges his contract with the Allreds included the Allreds' promise to obey the H-2A regulations. (App. at 27.) It alleges the Allreds

directed Mr. Saenz "to spend more than half of his time . . . performing various tasks on the head quarters ranch," and that "[t]his work was not covered by Plaintiff Saenz['s] H-2A contract." (App. at 31.) Thus, the complaint continues, "[p]ursuant to DOL's H-2A regulations the work Saenz performed was H-2A agricultural work for which he was legally required to be paid [the H-2A minimum for ranch hands]." (App. at 31.) Finally, the complaint alleges the Allreds breached their contract with Mr. Saenz, and it seeks "relief pursuant to the common law of contracts." (App at 32.) The factual and legal bases for Mr. Saenz's claim are plainly stated, and we see no basis for affirming the district court's decision because of any flaw in the complaint.

Fourth, the Allreds argue Mr. Saenz cannot recover the H-2A wage in quantum meruit because the amount of recovery under quantum meruit is "the amount the parties intended as the contract price," which, in this case, is the $750 per month Mr. Saenz was actually paid. But this argument fails because the intended contractual wage was illegal and the wage term of the contract was accordingly invalid. When a contract lacks a price term, quantum meruit may be used to substitute a reasonable price. *Rhodes v. Clute*, 53 P. 990, 991 (Utah 1898); *see also Davies v. Olson*, 746 P.2d 264, 269 (Utah Ct. App. 1987) (acknowledging propriety of quantum meruit where there is a contract implied in fact but "the contract price . . . . is unexpressed"). In this case, a reasonable price must be at least as high as the lowest wage Mr. Saenz could legally be paid: the H-2A wage for ranch hands.

Fifth, although the Allreds claim Mr. Saenz has committed discovery violations meriting sanctions, it is not our place to assess that claim. Discovery sanctions lie within the discretion of the district court. *Woodworker's Supply, Inc. v. Principal Mut'l Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). Consequently, when a district court has denied a sanctions motion as moot, without reaching its merits, it would be inappropriate for an appellate court to decide the motion in the first instance. If the Allreds' requested discovery sanctions are no longer moot after our ruling, then the Allreds may renew their motion on remand.

Sixth and finally, the Allreds argue Mr. Saenz's evidence concerning damages was inadequate and, consequently, "Saenz cannot prove damages." (Appellees' Br. at 32.) In particular, they point out that Mr. Saenz did not "designate an expert or produce an economics report," (*id.* at 31) which the Allreds consider necessary because "damages [in this case] are complicated" (*id.* at 32).

We do not see why damages are complicated in this case, or why Mr. Saenz would need an expert or an economics report. In simple back-wages claims like this one, all a fact-finder needs to calculate damages is the hourly wage, the number of hours worked, and the amount already paid. Here the minimum hourly wage is set by law: the H-2A wage for ranch hands.[4] The amount already paid may be in dispute to the extent of the value of Mr. Saenz's room and board, but the burden to prove the

---

[4] In theory, quantum meruit would allow Mr. Saenz to recover a higher wage than the minimum if he presented evidence proving the minimum wage was less than the fair value of his services. However, Mr. Saenz has not claimed the H-2A wage for ranch hands is inadequate in his case, so that is the wage the district court should use to calculate damages.

value of such wage offsets falls on the employer, not the employee.  *Donovan v. Williams Chem. Co.*, 682 F.2d 185, 190 (8th Cir. 1982); *J. Henry Jones, Co. v. Smith*, 494 P.2d 526, 527 (Utah 1972) (holding that offset is an affirmative defense on which the defendant has the burden of proof).  Finally, there is sufficient evidence in the record for a fact-finder to estimate Mr. Saenz's hours.  Phillip and Chance Allred testified Mr. Saenz worked eight hours per day plus extra hours when needed, Preston Allred testified Mr. Saenz's ordinary workday was eight to ten hours, and Mr. Saenz himself testified he sometimes worked eight or nine hours per day and sometimes fifteen or more.  All parties seem to agree that he worked nearly every day for almost thirteen months.

The Allreds suggest this evidence is inadequate because Mr. Saenz must prove how many hours he spent on sheepherding work and how many on other duties. They are mistaken.  Because Mr. Saenz was a ranch hand, even the hours he spent sheepherding must be compensated at or above the H-2A rate for ranch hands.  Mr. Saenz thus does not need to prove how many hours he spent on each type of work; he merely needs to prove, "as a matter of just and reasonable inference," the total number of hours he worked.  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded by statute on other grounds as recognized in Integrity Staffing Sols, Inc. v. Busk*, 135 S. Ct. 513, 516 (2014).  Mr. Saenz has clearly met this burden.  Therefore the district court must "award damages to the employee, even though the result be only approximate."  *Id.* at 688.

In short, we reject all of the Allreds' alternative grounds for affirmance, and we conclude that Mr. Saenz is entitled to recovery as a matter of law. We therefore **REVERSE** the district court's decision and direct it to **GRANT** Mr. Saenz's summary judgment motion as to his FLSA, contract, and quantum meruit claims. We **REMAND** for a determination of damages and, if necessary, for other proceedings consistent with this opinion.