**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 17, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

IN RE: SANDRIDGE ENERGY, INC.
SHAREHOLDER DERIVATIVE
LITIGATION,

------------------------------

PAUL ELLIOT, on behalf of the Paul
Elliot IRA R/O, derivatively on behalf of
Sandridge Energy, Inc.; LISA EZELL,
derivatively on behalf of SandRidge
Energy, Inc.,

     Plaintiffs - Appellees,

v.

TOM L. WARD; JIM J. BREWER;
EVERETT R. DOBSON; WILLIAM A.
GILLILAND; DANIEL W. JORDAN;
ROY T. OLIVER, JR.; JEFFREY S.
SEROTA; SPECIAL LITIGATION
COMMITTEE OF SANDRIDGE'S
BOARD OF DIRECTORS,

     Defendants - Appellees,

and

SANDRIDGE ENERGY, INC.,

     Nominal Defendant - Appellee,

and

TLW LAND & CATTLE, L.P.; WCT
RESOURCES, L.L.C.; 192

No. 16-6014

INVESTMENTS, L.L.C.,

    Defendants.

------------------------------

DALE HEFNER,

    Objector - Appellant.

_____

**Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. 5:13-CV-00102-W)**
_____

George C. Aguilar, Robbins Arroyo LLP (Jay N. Razzouk, Robbins Arroyo, LLP, San Diego, California, and Charles F. Alden, III, Oklahoma City, Oklahoma, with him on the briefs), for Objector-Appellant.

Mark E. McKane, Kirkland & Ellis, LLP, San Francisco, California, and Reggie N. Whitten, Whitten Burrage, Oklahoma City, Oklahoma (Michael Burrage and Randa K. Reeves, Whitten Burrage, Oklahoma City, Oklahoma, Robert N. Kaplan and Jeffrey P. Campisi of Kaplan, Fox & Kilsheimer, LLP, New York, New York, with them on the brief), for Plaintiffs-Appellees.

Thomas B. Snyder, Crowe & Dunlevy, Oklahoma City, Oklahoma, Mark P. Gimbel and C. William Phillips of Covington & Burling, LLP, New York, New York, for Independent Directors.
_____

Before **KELLY**, **MURPHY**, and **MORITZ**, Circuit Judges.
_____

**KELLY**, Circuit Judge.
_____

Objector-Appellant Dale Hefner appeals from the district court's denial of his motion for settlement-related discovery, approval of the settlement agreement, and order regarding attorneys' fees. In re Sandridge Energy Inc., No. CIV-13-102-W, 2015 WL

11899141 (W.D. Okla. Dec. 15, 2015); In re Sandridge Energy Inc., No. CIV-13-102-W, 2015 WL 11921422 (W.D. Okla. Dec. 22, 2015).  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## **Background**

This case concerns the settlement agreement and attorneys' fees related to two separate shareholder derivative suits on behalf of SandRidge Energy Inc. ("SandRidge") against its directors.  The first of those actions was filed in federal district court in January 2013.  The federal derivative suit alleged self-dealing, usurpation of corporate opportunities, and misappropriation by Tom Ward, SandRidge's founding CEO, and entities affiliated with him.  See 2 Aplt. App. 247–343.  It also claimed that certain Sandridge officers and directors were complicit and breached their fiduciary duties.  Id.

The second derivative suit was filed in Oklahoma state court in January 2013 by Mr. Hefner.  5 Aplt. App. 1310–58.  The director-defendants moved the state court to stay the action pending a resolution in the federal case, or in the alternative to dismiss the suit entirely.  Mr. Hefner objected, and the state court stayed the action but denied the motion to dismiss.  6 Aplt. App. 1417–18.  After further briefing and a renewed motion to dismiss, the state court again denied the motion.  Id. at 1487.  In November 2014, the state court entered a stipulated and agreed to order granting SandRidge's motion to stay.  Id. at 1492–93.

On October 9, 2015, the federal district court granted its preliminary approval of a partial settlement in the federal suit.  4 Aplt. App. 1017–19.  On October 30, 2015, Mr.

Hefner filed notice of his intent to appear at the settlement hearing, object to the settlement, and request additional settlement-related discovery. Id. at 1025–26. The federal plaintiffs filed a motion for final approval of the partial derivative settlement on November 25, 2015. Key terms of the proposed settlement included (1) that the settling defendants' insurers would pay $38 million to SandRidge, "to the extent that funds remain after deducting certain Designated Litigation Expenses . . . arising from a separate Securities Litigation," and (2) the institution of additional corporate governance measures to prevent future occurrences of misconduct. Id. at 1047–48. Additionally, the plaintiffs requested an award of attorneys' fees and expenses totaling approximately $13 million. Id. at 1069.

In response, Mr. Hefner (1) filed a contingent motion for attorneys' fees and reimbursement of expenses, (2) objected to the settlement, and (3) requested additional settlement-related discovery. In his request for attorneys' fees, Mr. Hefner contended that without his "successful litigation in the State Action, the Settlement would not have occurred — and certainly not on the same terms." 5 Aplt. App. 1266. He also argued that after the federal case initially was dismissed, he "helped turn the tide in [the federal] litigation, beating a motion to dismiss [in state court] on demand futility grounds" and then cooperated with the federal litigation by agreeing to temporarily stay his state-court action. Id. at 1266, 1269.

Regarding the proposed settlement, Mr. Hefner argued that the federal court lacked subject-matter jurisdiction; that the settlement was for the benefit of the attorneys and insurance companies, but not of SandRidge itself since the funds would first be used

- 4 -

to pay attorneys, then to pay for separate litigation (which the insurance companies would otherwise pay for), and would only then — if there was anything left — accrue to SandRidge; that the request for $13 million in attorneys' fees was too large, representing over 34% of the total settlement fund; and that the proposed agreement would unfairly settle unique claims brought by Mr. Hefner in the state-court action. 6 Aplt. App. 1572–90. In sum, Mr. Hefner contended that the benefit to SandRidge did not outweigh the value of continuing litigation and that the settlement should be rejected. Id. at 1592–93.

The district court denied Mr. Hefner's motion for additional discovery and, after a hearing on the other matters, entered a final order and judgment approving the proposed partial settlement and denying Mr. Hefner's request for attorneys' fees. 8 Aplt. App. 2062–68.

Mr. Hefner appealed to this court, challenging the federal court's jurisdiction to approve the settlement and arguing that the district court abused its discretion by (1) approving the settlement and (2) denying his motions for additional discovery and for attorneys' fees. Aplt. Br. at 8–9.

Thereafter, on May 16, 2016, SandRidge filed for Chapter 11 bankruptcy. We abated the appeal pending the bankruptcy proceedings. On November 14, 2016, SandRidge gave notice of the bankruptcy court's approval of the company's plan of reorganization and filed a contemporaneous motion to dismiss the appeal as moot.[1] SandRidge contends that (1) because the company's stock was cancelled as part of the

---

[1] Plaintiffs in the underlying derivative suit joined the motion to dismiss.

bankruptcy reorganization, neither Mr. Hefner nor anyone else had standing to pursue a shareholder derivative claim; (2) the relevant shareholder derivative claims were released and discharged as part of the reorganization; and (3) the right to pursue derivative litigation vested in reorganized SandRidge. See Mot. to Dismiss at 1–2. In his response, Mr. Hefner notified the court that he was seeking clarification from the bankruptcy court regarding the effect of SandRidge's reorganization. Opp'n to Mot. to Dismiss at 1. He also argues that even though a plaintiff could no longer prosecute a derivative claim since SandRidge cancelled its stock, an objector is not subject to the continuous-ownership requirement. And finally, he contends that even if no further derivative action could be pursued, his claim for attorneys' fees was still live. Id. at 2.

We ordered appellate briefing resumed, reserving the motion to dismiss for the merits panel. On April 24, 2017, Mr. Hefner reported that the bankruptcy court denied his motion for clarification "so long as the issue . . . remains pending before the Tenth Circuit Court of Appeals unless specifically requested to do so." See Aplt. Status Report Regarding Bankruptcy Ct. Inquiry (Aug. 24, 2017).

## Discussion

### A.     Jurisdiction

Mr. Hefner contends that the district court erred in exercising subject-matter jurisdiction over the federal derivative litigation because the underlying parties had not proven diversity of citizenship. Aplt. Br. at 10–14. According to Mr. Hefner, "Plaintiffs had to establish . . . that not only are the entities members' citizenship diverse from that

of Plaintiffs, but that their members' members, such as trustees, limited partners, and beneficiaries, are also diverse." Aplt. Br. at 13.

The initial disclosure statements did not say what states these entities are citizens of, nor did they declare who the members' members are or of what states those members are citizens. Aplt. App. 145–50. Accordingly, we requested Plaintiffs to provide this additional information. It shows the citizenship of each of the defendant parties. See Aplee. Submission Regarding Defs.' Citizenship (Aug. 9, 2017). The Ward entities, based on the citizenship of their members, are citizens of Oklahoma. Thus, diversity jurisdiction is proper under 28 U.S.C. § 1332.

### B.     Justiciability

Sandridge argues that Mr. Hefner no longer has standing to bring a claim because the claim has been mooted by subsequent events. We agree that Mr. Hefner's claims have been mooted except his claim for attorneys' fees.

As part of its approval of SandRidge's plan of reorganization, the bankruptcy court expressly approved the release by debtor SandRidge of any and all claims and suits, including any derivative actions it had against former or current company directors and officers. See Mot. to Dismiss Ex. 10, In re Sandridge, Dkt. No. 901, at 31–32 (Confirmation Order). This plan also extinguished all shares in pre-petition SandRidge. Id. at 98–99.

In ascertaining whether a case has become moot, the court considers whether subsequent events have deprived the plaintiff of standing. "Article III mootness is 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at

the commencement of the litigation (standing) must continue throughout its existence (mootness)." S. Utah Wilderness All. v. Smith, 110 F.3d 724, 727 (10th Cir. 1997). Put differently, while standing is considered at the time the action is brought, mootness involves the court asking whether standing exists as the case appears now.

According to SandRidge, the appeal is moot not only because Mr. Hefner himself no longer has standing to pursue a derivative action or objection but because no one else has standing to pursue such a claim either. Thus, "[i]f Mr. Hefner were somehow to prevail on this appeal, the settlement would be unwound and the case would be remanded, but after remand there would be no derivative plaintiffs with standing to litigate the suit and all of the claims against the prepetition directors and officers have been released and discharged in the bankruptcy." Reply in Supp. of Mot. to Dismiss at 2. It would therefore be impossible for the district court to grant the relief that Mr. Hefner requests. Id.

Mr. Hefner responds that his lack of standing to pursue a derivative action does not mean that he lacks standing to object to the settlement. Opp. to Mot. to Dismiss at 8–10. This is ordinarily true. It is the derivative plaintiff who is subject to the continuous ownership requirement, while the objector "need only own stock in the corporation at the time of the settlement hearing." Rosenbaum v. MacAllister, 64 F.3d 1439, 1443 n.2 (10th Cir. 1995). As for the relief pursued, Mr. Hefner contends that while he is no longer able to pursue a derivative action, there are many claims still ripe for adjudication. "What matters now," he contends, "is whether the District Court abused its discretion by approving the Settlement based on the record before it." Opp. to Mot. to Dismiss at 18.

Nonetheless, ripeness on its own is not enough to establish justiciability.  The question still remains as to what relief the court could offer.  To be justiciable, the suit must remain "live" throughout the course of litigation such that there is a "legally cognizable interest in the outcome."  Murphy v. Hunt, 455 U.S. 478, 481 (1982) (quoting U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 396 (1980)). This includes the ability of a court to provide effective relief.  Jordan v. Sosa, 654 F.3d 1012, 1023 (10th Cir. 2011).

This latter point is where Mr. Hefner's claims fail.  If Mr. Hefner were to succeed in showing that the district court abused its discretion in approving the settlement, this court could reverse the settlement judgment and remand for further action.  On remand, the district court would then have to dismiss the derivative suit entirely because none of the plaintiffs have standing to pursue it — all their shares have been cancelled, and all their claims have become property of reorganized SandRidge.  Thus, the relief initially requested — a settlement that is more favorable to pre-petition SandRidge — is impossible to grant, and Mr. Hefner's revised request of a declaration that the district court erred would be nothing more than "the satisfaction of a declaration that a person was wronged."  Cox v. Phelps Dodge Corp., 43 F.3d 1345, 1348 (10th Cir. 1994).  This Article III does not permit.  Id.

Because Mr. Hefner's request for additional settlement-related discovery and his challenge to the award of plaintiffs' attorneys' fees were also brought as an objector on behalf of SandRidge, they are also moot for the same reasons as his objection to the approval of the settlement.

This leaves Mr. Hefner's request for attorneys' fees. Plaintiffs include this request with the others on appeal as moot, but this claim is unlike the others. Mr. Hefner's argument is that his attorneys conferred a substantial benefit to SandRidge as part of the settlement process and that they should be paid for that benefit. This is a backward-looking claim for monetary compensation that does not depend on Mr. Hefner's future ability to pursue a derivative claim on behalf of SandRidge. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 396–97 (1990) (listing examples of collateral issues, such as attorneys' fees, that can be ruled on after the underlying action is no longer pending). For this reason, his claim for attorneys' fees is not moot. We therefore consider the district court's decision not to award Mr. Hefner's attorneys' fees.

## C.    Attorneys' Fees

Mr. Hefner next argues that the district court incorrectly denied his request for his counsel's attorneys' fees. The district court concluded that Mr. Hefner conferred "no substantial benefit to SandRidge or its shareholders," "that no action taken either by Hefner or by his counsel aided or advanced the prosecution of the Plaintiffs' claims against the Settling Defendants or contributed to the negotiation of the Settlement," "and that no objections to the Settlement lodged by Hefner or his counsel benefitted SandRidge or its shareholders or assisted the Court either in assessing the fairness, adequacy and reasonableness of the Settlement." In re Sandridge Energy Inc., No. CIV-13-102-W, 2015 WL 11921422, at *4 (W.D. Okla. Dec. 22, 2015). Mr. Hefner argues that these findings are clearly erroneous and are also based upon an incorrect legal assumption that counsel must be involved in the Plaintiffs' federal action.

- 10 -

Under the clearly erroneous standard, a district court's factual findings will be upheld unless "on the entire evidence [we are] left with the definite and firm conviction that a mistake has been committed." Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)). The legal analysis providing the basis for the fee award is reviewed de novo. Aguinaga v. United Food and Commercial Workers Int'l Union, 993 F.2d 1480, 1481 (10th Cir. 1993).

Mr. Hefner's argument is that the $13 million the district court awarded from the common fund to Plaintiffs' attorneys unjustly "compensat[es] Plaintiffs for value generated by Hefner and his counsel's efforts." Aplt. Br. at 49. Moreover, Mr. Hefner argues that the district court erred by confining its analysis to the benefit Mr. Hefner may have contributed in the federal-court action rather than to the company more generally. Id. at 54.

In this last point, Mr. Hefner is correct that objectors and other parties who contribute to the "collective good" of the corporation can still be compensated from the common fund for any benefit they confer to the other shareholders. See Gottlieb v. Barry, 43 F.3d 474, 488–89 (10th Cir. 1994). But the district court's explanation for why it chose not to reward Mr. Hefner attorneys' fees did not overlook this legal rule; instead, it simply concluded, as a factual matter, that "no substantial benefit to SandRidge or its shareholders has been conferred by Hefner or his counsel." In re SandRidge Energy, Inc., 2015 WL 11921422, at *4. Mr. Hefner points to several actions that could have been construed as helpful to the shareholders — but his arguments hardly compel a

- 11 -

finding that his efforts were causally linked to the settlement. Indeed, the district court found that it was the extensive efforts of Plaintiffs' counsel, not Mr. Hefner's, which moved the needle. The clearly erroneous standard is a high bar, and in this case, we are not left with a definite and firm conviction that the district committed a mistake.

Mr. Hefner also contends that the district court abused its discretion by not seriously considering Mr. Hefner's objections given the record evidence. A district court abuses its discretion when its decision is "arbitrary, capricious or whimsical, or manifestly unreasonable." Birch v. Polaris Indus., Inc., 812 F.3d 1238, 1247 (10th Cir. 2015) (quoting Rocky Mountain Christian Church v. Bd. of Cty. Comm'rs, 613 F.3d 1229, 1239–40 (10th Cir. 2010)). The district court's ruling does not rise to that level. The district court explained its rejection of Mr. Hefner's position, noting that Mr. Hefner already had received a "mountain of discovery" and provided nothing other than conjecture as to why his objections would have benefited the shareholders. Accordingly, we find that the district court did not abuse its discretion.

We AFFIRM the district court's judgment insofar as attorneys' fees and DISMISS the balance of the appeal as moot. All pending motions are denied.