**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 14, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

SECURITIES AND EXCHANGE
COMMISSION,

     Plaintiff,

v.

AMERICAN PENSION SERVICES, INC.,
a Utah corporation; CURTIS L.
DeYOUNG, an individual,

     Defendants.

------------------------------

MICHELLE DeYOUNG, an individual,

     Intervenor - Appellant/Cross-
Appellee,

v.

DIANE THOMPSON,

     Receiver - Appellee/Cross-
Appellant.

_____

SECURITIES AND EXCHANGE
COMMISSION,

     Plaintiff,

v.

AMERICAN PENSION SERVICES, INC.,
a Utah corporation; CURTIS L.

No. 18-4114
(D.C. No. 2:14-CV-00309-RJS)
(D. Utah)

No. 18-4121
(D.C. No. 2:14-CV-00309-RJS)
(D. Utah)

DEYOUNG, an individual,

     Defendants.

------------------------------

MICHELLE DeYOUNG, an individual,

     Intervenor - Appellee,

v.

DIANE THOMPSON,

     Receiver - Appellant.

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **MORITZ**, and **CARSON**, Circuit Judges.
_____

Michelle DeYoung appeals the district court's orders denying her motion to enforce a settlement agreement and terminating the receivership of American Pension Services (APS). In a cross-appeal, the Receiver appeals the district court's order denying her request for attorney fees. For the reasons explained below, we affirm the district court's orders denying the motion to enforce and terminating the receivership. But we vacate the district court's order on attorney fees and remand that issue to the district court for further proceedings.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

## Background

The SEC initiated the underlying securities-fraud action against APS and its owner, DeYoung's ex-husband, in 2014. DeYoung herself was an employee and officer of APS. As part of the securities-fraud action, the district court appointed the Receiver to marshal and preserve assets for aggrieved APS investors. To that end, the Receiver initiated a separate action against DeYoung and her ex-husband, seeking to recover funds fraudulently transferred to their retirement accounts and pursuing disgorgement of APS-related wages and income. After the Receiver filed suit against her, DeYoung intervened in the receivership action. DeYoung eventually reached a settlement agreement with the Receiver, and the district court approved it in February 2016.

The settlement agreement required DeYoung to provide a list of collectibles and judgments to the Receiver, which she did. And in the event the Receiver decided not to pursue these assets, DeYoung asked the Receiver to turn them over to her. The settlement agreement required the Receiver to either "commence collection . . . or abandon" the identified collectibles and judgments within 60 days from DeYoung's disclosure. App. vol. 2, 27. To "commence collection" of these assets, the agreement required the Receiver to make a supplemental filing with the district court "requesting permission" to pursue them. *Id.* In April 2016, the Receiver filed a notice with the district court, stating that she intended "to pursue all of the items included on" DeYoung's list. App. vol. 1, 148. But the Receiver's notice failed to "request[] permission" to pursue the assets. App. vol. 2, 27.

3

In June 2016, DeYoung filed her first motion to enforce the settlement agreement, arguing that the Receiver breached the terms of the settlement agreement concerning pursuit of the collectibles and judgments. The district court denied this motion without prejudice, noting that it could not yet enforce the settlement agreement because of a still-pending condition precedent.

According to DeYoung, "[a]ll of the conditions precedent were fulfilled on or about December 9, 2016." DeYoung Br. 19. But DeYoung waited nearly 17 months—until April 21, 2018—to file a second motion to enforce the settlement agreement and reassert her challenge to the Receiver's notice of pursuit of the collectibles and judgments. And in the interim, the Receiver carried out her duties, investigated and pursued assets, filed a final report, and, on March 30, 2018, moved to terminate the receivership. Nevertheless, DeYoung argued in her second motion to enforce that the Receiver violated the settlement agreement because she did not "request[] permission to pursue" the assets in her April 2016 notice. App. vol. 2, 11 (quoting *id.* at 27). DeYoung further claimed that the Receiver's failure rendered the assets "abandoned" under the agreement. *Id.* Accordingly, DeYoung asked the district court to assign to her all of the "abandoned" collectibles and judgments. *Id.* at 12.

The district court denied DeYoung's second motion to enforce the settlement agreement. Applying principles of waiver and estoppel, the district court concluded that DeYoung needlessly delayed for nearly 17 months while the Receiver expended

4

resources pursuing the assets listed in the April 2016 notice. The district court contemporaneously terminated the receivership.

The Receiver asked the district court to award her attorney fees based on a provision of the settlement agreement providing that the prevailing party in an action for breach or failure to perform would receive attorney fees. The district court denied the Receiver's request without explanation.

DeYoung and the Receiver now appeal.

**Analysis**

**I. Second Motion to Enforce the Settlement Agreement**

DeYoung argues that the district court erred in denying her second motion to enforce the settlement agreement. "We review a district court's decision regarding the enforcement of a settlement agreement for abuse of discretion."[1] *Feerer v. Amoco Prod. Co.*, 242 F.3d 1259, 1262 (10th Cir. 2001).

---

[1] DeYoung argues that our standard of review should be de novo. In so doing, she identifies that in the context of an action for breach of contract, we review "the district court's interpretation of [a] settlement agreement de novo." *Scrivner v. Sonat Expl. Co.*, 242 F.3d 1288, 1291 (10th Cir. 2001). But DeYoung did not sue the Receiver for breach of contract. Instead, she moved to enforce the settlement agreement within the receivership action, which sounds in equity. *See SEC v. Vescor Cap. Corp.*, 599 F.3d 1189, 1194 (10th Cir. 2010) ("It is generally recognized 'that the district court has broad powers and wide discretion to determine . . . relief in an equity receivership.'" (alteration in original) (quoting *SEC v. Safety Fin. Serv.*, Inc., 674 F.2d 368, 372–73 (5th Cir. 1982))). And the district court denied DeYoung's motion on equitable grounds. Accordingly, we review that denial for abuse of discretion. *See SEC v. DeYoung*, 850 F.3d 1172, 1182 (10th Cir. 2017) (reviewing district court's decisions in receivership action for abuse of discretion); *Biodiversity Conservation All. v. Jiron*, 762 F.3d 1036, 1090 (10th Cir. 2014) (explaining, on appeal from district court's decision not to enforce settlement agreement, that "we

5

In denying DeYoung's motion, the district court first noted that the alleged violation of the settlement agreement—the Receiver's invalid notice of intent to pursue—occurred on April 22, 2016. And the district court agreed with DeYoung that because the notice did not "request . . . permission . . . to pursue any of" the assets, the Receiver "was not technically in compliance with the requirements of the settlement agreement." App. vol. 2, 159–60. But the district court determined that despite this deficient notice, the Receiver went on to pursue the collectibles and judgments. And only after the Receiver expended time and resources actually pursuing the collectibles and judgments did DeYoung file her second motion to enforce the settlement agreement. Accordingly, the district court concluded that "under a legal theory of estoppel," DeYoung was "barred from raising this issue at this stage of the proceedings by virtue of the fact that it is just extraordinarily prejudicial to the receivership estate and to the investors themselves."[2] *Id.* at 161.

On appeal, DeYoung argues that the district court erred in finding her equitably estopped from raising her claim for enforcement of the settlement agreement. The Utah Supreme Court has explained that "[e]stoppel is a doctrine of equity purposed to rescue from loss a party who has, without fault, been deluded into

review the district court's balancing of the equities for abuse of discretion" (quoting *Bermuda Express, N.V. v. M/V Litsa*, 872 F.2d 554, 557 (3d Cir. 1989))).

[2] The district court also concluded that waiver barred DeYoung from raising this issue. Because we can affirm based solely on estoppel, we need not and do not address waiver. *See Berna v. Chater*, 101 F.3d 631, 633 (10th Cir. 1996) (noting that any one of district court's alternative grounds can provide "sufficient basis" for its ruling (quoting *Murrell v. Shalala*, 43 F.3d 1388, 1389–90 (10th Cir. 1994))).

a course of action by the wrong or neglect of another." *Plateau Mining Co. v. Utah Div. of State Lands & Forestry*, 802 P.2d 720, 728 (Utah 1990) (quoting *Morgan v. Bd. of State Lands*, 549 P.2d 695, 697 (Utah 1976)). Equitable estoppel under Utah law requires three elements: (1) "a statement, admission, act, or failure to act by one party inconsistent with a claim later asserted"; (2) "reasonable action or inaction by the other party taken or not taken on the basis of the first party's statement, admission, act[,] or failure to act"; and (3) "injury to the second party that would result from allowing the first party to contradict or repudiate such statement, admission, act, or failure to act." *Salt Lake City Corp. v. Big Ditch Irrigation Co.*, 258 P.3d 539, 548 (Utah 2011) (quoting *Youngblood v. Auto-Owners Ins. Co.*, 158 P.3d 1088, 1092 (Utah 2007)).

DeYoung suggests in passing that the first element—a statement, action, or failure to act—is absent here because the record shows only that she remained silent, not that she made any particular statement or admission. In support, she cites caselaw establishing that "for silence to work an estoppel, there must be a legal duty to speak, or there must be something willful or culpable in the silence which allows another to place himself [or herself] in an unfavorable position by reason thereof." *Hall v. Peterson*, 409 P.3d 133, 142–43 (Utah Ct. App. 2017) (quoting *First Inv. Co. v. Andersen*, 621 P.2d 683, 687 (Utah 1980)); *see also Utah State Bldg. Comm'n v. Great Am. Indem. Co.*, 140 P.2d 763, 771 (Utah 1943) ("'It is almost unnecessary to add that mere inaction or silence may, under peculiar circumstances, amount to both

7

misrepresentation and concealment,' which may amount to an estoppel." (quoting

*Hilton v. Sloan*, 108 P. 689, 694 (Utah 1910))).

But DeYoung was not merely silent during these nearly 17 months. Instead, she continued to litigate the matter, day after day, week after week, and month after month, taking affirmative steps to prosecute the case. For example, DeYoung herself asserts that (1) during 2017, she "and her prior counsel litigated cross complaints for alleged unpaid legal fees and alleged malpractice" and (2) in January 2018, she "notified the Receiver's counsel via email" about receiving certain assets from the Receiver. DeYoung Br. 17, 19. Indeed, the district court docket shows numerous filings by DeYoung between December 2016 and April 2018. For instance, in one motion, DeYoung explained that because the settlement agreement fully resolved all the claims against her, the court should lift the order freezing her assets. These affirmative acts signaled that DeYoung had elected to pursue an alternative legal strategy as the receivership worked its way toward closure. Thus, taken in context, the record belies DeYoung's assertion that she simply remained silent. Rather, the record shows "something willful or culpable in" DeYoung's failure to pursue her claim for enforcement of the settlement agreement for nearly 17 months. *Hall*, 409 P.3d at 142–43. Accordingly, DeYoung's delay in filing her second motion to enforce the settlement agreement while she took other affirmative actions is "inconsistent with [the] claim[s] later asserted" in the second motion to enforce and satisfies the first element of equitable estoppel. *Big Ditch Irrigation*, 258 P.3d at 548 (quoting *Youngblood*, 158 P.3d at 1092).

8

As to the second element of equitable estoppel—the Receiver's action or inaction based on DeYoung's actions or inaction—DeYoung acknowledges that the Receiver in fact pursued the collectibles and judgments from DeYoung's list. And on this point, the district court found that the Receiver hired third parties to assess and report on the value and collectability of these putative assets and invested both time and money in asset-related discovery. The district court specifically found that "[t]he receiver expended investor money from the receivership estate and time" while "DeYoung and her counsel stood silent." App. vol. 2, 161.

Nevertheless, DeYoung argues that in investigating and pursuing assets, the Receiver did not rely on DeYoung's failure to challenge the adequacy of the notice. Instead, DeYoung argues, the Receiver pursued the assets out of her general duty to the receivership. But even if the Receiver's pursuit of these assets can be characterized as part of the Receiver's general duty to "preserv[e] . . . [r]eceivership [p]roperty," such a circumstance is not inconsistent with the district court's finding that the Receiver acted in reliance upon DeYoung's silence. App. vol. 1, 111. Stated another way, if DeYoung had timely reasserted her challenge to the Receiver's notice, that challenge could have caused the Receiver to reevaluate or discontinue her pursuit of the collectibles and judgments, or, at the very least, would have allowed the parties to litigate and potentially remedy the Receiver's alleged violation of the settlement agreement before the Receiver expended time and resources pursuing the assets.

9

Moving to the third element of equitable estoppel—prejudice or injury resulting from DeYoung's actions or failure to act—DeYoung asserts that "[t]here has been effectively no detriment to the Receiver in this case, and there is no detriment that the Receiver would suffer if she were ordered to turn over the" assets. DeYoung Br. 21. Underpinning this assertion is DeYoung's belief that she could pursue and seek collection of those assets, even though the Receiver had concluded that the underlying claims were time-barred or otherwise of limited or no value. In these circumstances, the district court faced what it considered a unique situation "where[,] at the conclusion of a receivership, the receivership assets are tendered to a third party who can then continue to pursue those claims." App. vol. 2, 130. And counsel for DeYoung agreed that she was unaware "of a single case, a single federal case where that has happened." *Id.* at 131.

As such, the district court found that permitting DeYoung to go forward—despite her failure to reassert her challenge to the Receiver's notice in a timely manner while at the same time pursuing another litigation strategy—would prejudice the orderly termination of the receivership and frustrate stakeholders. The district court explained that the prospect of an individual pursuing assigned claims after the close of the receivership was especially unnerving because "for the investors and interested parties in the world, there has to be a day of closure." *Id.* at 132–33. The district court likewise emphasized that conducting full-blown proceedings on DeYoung's claim for enforcement of the settlement agreement would disrupt the impending conclusion of a complex and long-running receivership case. It remarked

that "at the end of the day we're on the one-yard line[,] having come 99 yards in four years and 1,000 motions," and it was hesitant to "just suspend everything to essentially have a lawsuit inside of a lawsuit." *Id.* at 163. The court also expressed "concern" about "ordering an assignment . . . to someone who was an officer of the company at the time when the company defrauded its investors to the tune of $25 million, then to have that person out pursuing claims on behalf of the company[.]" *Id.* at 146. And the court noted that if it were to order the Receiver to assign certain assets, its order might "carry some inference that there is something assigned worth pursuing,"—an inference the district court was "not prepared" to endorse. *Id.* at 132– 33. Accordingly, the district court ultimately determined that allowing DeYoung to proceed on her claim for enforcement of the settlement agreement would be "entirely too prejudicial to the investors and to the receivership estate." *Id.*; *see also Big Ditch Irrigation*, 258 P.3d at 548 (noting that equitable estoppel requires "injury to the second party that would result from allowing the first party to contradict or repudiate such statement, admission, act, or failure to act" (quoting *Youngblood*, 158 P.3d at 1092)).

Given these well-defined and unique circumstances, the record supports the district court's finding of estoppel. As discussed, DeYoung delayed reasserting her claim for enforcement of the settlement agreement for nearly 17 months while she continued to actively litigate other matters in this case, and the Receiver relied on DeYoung's actions to pursue assets. DeYoung's actions not only prejudiced the administration of the receivership but also suggested to investors and other

11

stakeholders that all claims relating to APS's estate would be extinguished upon termination of the receivership. These considerations are closely linked to one of the primary purposes of the receivership: "to promote orderly and efficient administration of the estate by the district court for the benefit of the creditors." *Broadbent v. Advantage Software, Inc.*, 415 F. App'x 73, 78 (10th Cir. 2011) (unpublished); *see also SEC v. Pension Fund of Am. L.C.*, 377 F. App'x 957, 962–63 (11th Cir. 2010) (unpublished) (holding that district court "did not abuse its wide discretion" when it "categorically precluded" former regional directors and sales agents of fraudulent enterprise "from recovering from the receivership estate"). Accordingly, we find no abuse of discretion in the district court's application of equitable estoppel.[3]

DeYoung also raises two legal—as opposed to equitable—challenges to the district court's order denying her motion. First, she contends that the district court erred in concluding that her motion was untimely because she filed her motion well within Utah's six-year statute of limitations for breach-of-contract actions. *See* Utah Code Ann. § 78B-2-309(1)(b). But DeYoung's motion was not a breach-of-contract complaint; instead, it was a motion filed within the equitable receivership action. And "in fashioning relief in an equity receivership, a district court has discretion to

---

[3] Judge Carson's concurrence would affirm based on the equitable doctrine of laches. We decline to address laches because the parties never raised, briefed, or argued the doctrine here or below. *See Elkins v. Comfort*, 392 F.3d 1159, 1162 (10th Cir. 2004) (noting that an important factor when exercising our "discretion to affirm on any ground adequately supported by the record" is whether "the ground was fully briefed and argued here and below").

summarily reject formalistic arguments that would otherwise be available in a traditional lawsuit." *Broadbent*, 415 F. App'x at 78–79; *see also Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946) ("Traditionally and for good reasons, statutes of limitation are not controlling measures of equitable relief."). As such, merely filing the motion to enforce within the applicable statute of limitations did not automatically render DeYoung's motion timely. *Cf. Brennan v. Nassau Cty.*, 352 F.3d 60, 63–64 (2d Cir. 2003) ("[C]onsent decrees are subject to equitable defenses and not legal defenses such as the statute of limitations.").

Second, DeYoung argues that the district court erred in denying her motion as untimely because the Receiver failed to plead any such defense. In support, DeYoung cites Federal Rule of Civil Procedure 8(c), which requires a defendant to affirmatively state defenses such as estoppel and waiver. Yet DeYoung's motion is not a complaint, and the Receiver's response is not an answer. And DeYoung cites no authority suggesting that the civil-procedure rules relating to pleading affirmative defenses apply here. Moreover, like the statute-of-limitations argument, this is the kind of "formalistic argument[] . . . available in a traditional lawsuit" that a court overseeing an equity receivership "has discretion to summarily reject." *Broadbent*, 415 F. App'x at 78–79. Accordingly, we reject both of DeYoung's legal arguments.

Finally, DeYoung contends that the district court abused its discretion by terminating the receivership. But in support, she argues only that the district court erred in terminating the receivership because it should not have denied her second motion to enforce the settlement agreement. We have already determined that the

13

district court did not abuse its discretion in denying the motion to enforce. As a result, DeYoung no longer has any pending claims against the receivership. Thus, we conclude that the district court acted within its discretion by terminating the receivership.

**II. Attorney Fees**

The Receiver argues that the district court abused its discretion when it declined to award her attorney fees. *See Scottsdale Ins. Co. v. Tolliver*, 636 F.3d 1273, 1276 (10th Cir. 2011) ("We review a district court's decision on whether to award attorney fees for abuse of discretion . . . ."). Below, the Receiver argued that she was entitled to attorney fees because the settlement agreement here expressly contemplates such an award for the prevailing party in "any proceeding" that "allege[s] breach or failure by the other [p]arty to fulfill or perform any covenants or obligations under" the agreement. App. vol. 2, 28–29. Notwithstanding this provision, the district court denied the Receiver's request without explanation.

On appeal, the Receiver asserts that in Utah, if a contract provides for attorney fees, a court should award them "in accordance with the terms of that contract." *Kenny v. Rich*, 186 P.3d 989, 1002 (Utah Ct. App. 2008) (quoting *Am. Rural Cellular v. Sys. Commc'n Corp.*, 939 P.2d 185, 192 (Utah Ct. App. 1997)). And although she "recognizes that a denial of attorney fees may be within the [d]istrict [c]ourt's discretion," she insists that "such a denial must be supported by a reasonable explanation." Receiver Rep. Br. 2.

14

In these circumstances, we agree. The settlement agreement plainly contemplates attorney fees for the prevailing party. Such "fees are routinely awarded and the contract is enforced according to its terms." *U.S. for Use of C.J.C., Inc. v. W. States Mech. Contractors, Inc.*, 834 F.2d 1533, 1548 (10th Cir. 1987). And although the district court, sitting in equity in this receivership action, retained the discretion to depart from a routine award of attorney fees contemplated by a settlement agreement, it offered no explanation for doing so here. The absence of any explanation leaves us with no way to review the district court's exercise of discretion. *See Zinna v. Congrove*, 680 F.3d 1236, 1242 (10th Cir. 2012) (agreeing with district court that party was entitled to fees but remanding because district court failed to adequately explain basis for amount of award); *Browder v. City of Moab*, 427 F.3d 717, 721 (10th Cir. 2005) ("Generally, district courts must give an adequate explanation for their decision regarding requests for attorney's fees, otherwise we have no record on which to base our decision.").

Perhaps the district court's decision not to award fees is reasonable and supported by the record. But we leave that decision and explanation to the district court.[4] We therefore vacate the district court's order on this issue and remand to the

---

[4] The dissent would search the record for such support. But it provides no authority to support its decision to do so. Moreover, DeYoung does not argue that the record supports the district court's decision. Perhaps the district court was, as the dissent states, "ready to close the book on this matter." Dissent 2. But given the complete absence of any such explanation, or, indeed, any explanation at all, we decline to speculate about the district court's rationale.

15

district court for the purpose of rendering a reasoned decision on the Receiver's request for attorney fees.

## Conclusion

The district court did not abuse its discretion in applying equitable estoppel to deny DeYoung's second motion to enforce the settlement agreement. We therefore affirm both that order and the order terminating the receivership. But we vacate the order denying the Receiver attorney fees and remand that issue for further proceedings.

Entered for the Court

Nancy Moritz
Circuit Judge

Nos. 18-4114 and 18-4121, *SEC v. American Pension Services, et al.*
**BRISCOE**, Circuit Judge, concurring and dissenting.

I concur in the resolution of DeYoung's appeal on estoppel grounds. However, I dissent from the vacatur and remand of the district court's order on attorney fees. I would instead affirm the district court across-the-board.

Paragraph 15.b of the settlement agreement notwithstanding, the parties agree that awarding fees in the context of a receivership was a matter of equitable discretion. Receiver Br. at 34; DeYoung Rep. Br. at 32–33. Even the Receiver maintains that the denial of the fee request may be reversed only if the panel "finds a complete absence of a reasonable basis" and is "certain" that the district court's decision was wrong. Receiver Br. at 34, citing *Zurich N. Am. v. Matrix Serv.*, 426 F.3d 1281, 1289 (10th Cir. 2005). This is consistent with the maxim that "[a] district court abuses its discretion when its decision is arbitrary, capricious or whimsical, or manifestly unreasonable." *In re Sandridge Energy, Inc.*, 875 F.3d 1297, 1304 (10th Cir. 2017).

Although the district court did not explain the basis for its denial of the Receiver's fee request, the record demonstrates that its decision was not arbitrary or manifestly unreasonable. DeYoung did not prevail on her motions to enforce the settlement agreement, but her position was by no means frivolous. She presented a robust argument that the Receiver breached Paragraph 7 of the settlement agreement, and she did not lose that claim on the merits. Instead, she lost the right to pursue her contract claim because the trial court decided to apply equitable doctrines. Requiring DeYoung to now foot the Receiver's bill in these circumstances would be inequitable. Moreover, conducting

further proceedings on the amount of any fee award presumably would have extended the litigation, undermining the timeliness and finality of the termination of the receivership. After four years of complex litigation, the district court was ready to close the book on this matter. Doing so was not an abuse of discretion.

*SEC v. American Pension Services, et al.*, 18-4114, 18-4121

**CARSON**, J., concurring.

I respectfully concur in the judgment. I agree with the majority that we should affirm the district court's denial of Ms. DeYoung's second motion to enforce the settlement agreement, but for a different reason. Rather than rely on equitable estoppel—which I do not think applies to the facts of this case—I would rely on the doctrine of laches to affirm the district court's order. In all other respects, I join Judge Moritz's thoughtful decision.

## I.

Ms. DeYoung intervened in a securities fraud action to enforce a settlement agreement against the Receiver. But Ms. DeYoung waited seventeen months to assert her rights while the Receiver expended resources to carry out her duties, filed a final report, and moved to terminate the receivership. Under these facts, I determine that Ms. DeYoung waited too long to file her second motion to enforce the settlement agreement. And, the eleventh-hour nature of her motion offends the equitable principles that laches protects. So the doctrine of laches bars Ms. DeYoung's dilatory motion.

The district court, however, based its denial on alternative holdings of waiver—which we all agree does not apply here—and equitable estoppel. And the parties briefed those two equitable theories, but not laches on appeal. Even so, we have both an adequate need and an adequate justification to consider laches in this case.

II.

Equitable estoppel protects against "conduct by one party which leads another party, in reliance thereon, to adopt a course of action resulting in detriment or damage." Homestead Golf Club, Inc. v. Pride Stables, 224 F.3d 1195, 1202 (10th Cir. 2000) (quoting Blackhurst v. Transamerica Ins. Co., 699 P.2d 688, 691 (Utah 1985)). But Utah law does not apply equitable estoppel "in favor of one who has knowledge of the essential facts or who has convenient and available means of obtaining such knowledge." Mencia v. Allred, 808 F.3d 463, 472 (10th Cir. 2015) (quoting Morgan v. Bd. of State Lands, 549 P.2d 695, 697 n.4 (Utah 1976)).

Although the district court found that the Receiver "lacked knowledge as to the facts claimed by Ms. DeYoung as a result of her silence," [Answer Br. at 21,] that finding is clearly erroneous. See United States v. Hernandez, 847 F.3d 1257, 1263 (10th Cir. 2017) (explaining that a "finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all of the evidence, we are left with the definite and firm conviction that a mistake has been made" (citation omitted)). Ms. DeYoung provided clear notice of her position that the Receiver failed to strictly comply with the settlement agreement—specifically, that the Receiver's Notice was insufficient and caused her to abandon the identified assets—in her first motion to enforce. Indeed, Ms. DeYoung stated that "the Receiver was either to request permission from the Court to pursue the identified Collectibles and Judgments within a certain time frame or be deemed to have abandoned such Collectibles and Judgments." [ROA Vol. I at 155–56.] Ms. DeYoung continued that the "Receiver

2

has not requested permission from the Court to pursue any of the identified Collectibles and Judgments, and this time frame has also now long since expired." [Id. at 156.] So Ms. DeYoung asked the district court to "[a]ssign **all** of the identified Collectibles and Judgment[s] to Ms. DeYoung." [Id. at 171 (emphasis in original)].

Although the Receiver may have detrimentally relied on Ms. DeYoung's failure to reassert that argument for seventeen months before bringing her second motion, that does not mean the Receiver lacked knowledge that she failed to technically comply with the settlement agreement during the delay. See Mencia, 808 F.3d at 472; Spaulding v. United Transp. Union, 279 F.3d 901, 909 (10th Cir. 2002) (observing a traditional estoppel claim requires that "the party asserting the estoppel must be ignorant of the true facts"). To me, Ms. DeYoung's delay in reasserting that contention in her second motion is her downfall—not any misleading action or inaction. See Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S. 663, 684–85 (2014) (recognizing that estoppel focuses on misleading conduct and consequent loss, but timeliness is the essential element of laches). As I read it, the record contains no evidence that Ms. DeYoung ever walked-back her contention that the Receiver owed her an assignment.[1] The Receiver therefore should have been on notice of the

---

[1] The majority frames the equitable estoppel issue as whether the Receiver knew Ms. DeYoung would *reassert* her position before the winding up of the receivership. [Majority at 9–11.] I think equitable estoppel requires more affirmative, misleading conduct than a failure to reassert an argument that a party already raised and never retracted. See Bass v. Potter, 522 F.3d 1098, 1106 (10th Cir. 2008) (explaining that "[e]quitable estoppel requires a showing of both actual

3

essential facts of Ms. DeYoung's settlement agreement argument throughout this litigation. I therefore believe that Utah law precludes us from applying equitable estoppel in the Receiver's favor on this issue.

## III.

Although the majority denies Ms. DeYoung relief on the ground of equitable estoppel, I think the doctrine of laches best fits this case. Indeed, laches and estoppel raise "very similar" considerations. Mile High Indus. v. Cohen, 222 F.3d 845, 858 (10th Cir. 2000). But the "test for estoppel is more exacting than the test for laches, and the two defenses are differently oriented." Petrella, 572 U.S. at 684 (2014). Because timeliness is the critical consideration, I would ground our holding in the doctrine of laches. I first address whether we can rely on a ground not raised by the parties and then apply laches to this case.

---

and reasonable reliance on [a party's] allegedly *misleading conduct*" (emphasis added) (internal quotation marks and citation omitted)); see also First Inv. Co. v. Andersen, 621 P.2d 683, 687 (Utah 1980) (recognizing that "in order for silence to work an estoppel, there must be a legal duty to speak, or there must be something willful or culpable in the silence which allows another to place himself in an unfavorable position by reason thereof" (citation omitted)).

And the majority reasons that Ms. DeYoung's continuous litigation during her seventeen-month silence as to the Receiver's notice "signaled that [she] had elected to pursue an alternative legal strategy." [Majority at 8.] I do not think we are particularly well-suited to discern a party's unstated intentions about litigation strategy. At what point did Ms. DeYoung's failure to reassert her position become misleading? Is six months too long of a delay? One year? I agree with the majority that Ms. DeYoung's seventeen-month delay was too long under the circumstances and prejudiced the Receiver. [Id.] But I think the timing of Ms. DeYoung's second motion violates principles of equity protected by laches, rather than any supposedly misleading conduct through her silence.

A.

Of course, we can affirm "on a ground not raised in the district court provided that the record is sufficiently clear to permit us to do so if both parties had an adequate opportunity to develop the record on the issue." Griffith v. Colo., Div. of Youth Servs., 17 F.3d 1323, 1328 (10th Cir. 1994). We have identified three factors to guide whether to consider an alternative theory: "[1] whether the ground was fully briefed and argued here and below; [2] whether the parties have had a fair opportunity to develop the factual record; and [3] whether, in light of factual findings to which we defer or uncontested facts, our decision would involve only questions of law." Elkins v. Comfort, 392 F.3d 1159, 1162 (10th Cir. 2004) (internal quotation marks, brackets, and citations omitted). Although the parties did not brief and argue laches here or below, the second and third Elkins factors favor considering laches.

The parties had more than a fair opportunity to develop the extensive record over several years of litigation.[2] The underlying district court litigation originated in 2014, contributing over 1,000 district court docket entries in a span of five years. [ROA Vol. I at 17–106.] During that time, the parties presented multiple rounds of briefing and oral argument on Ms. DeYoung's motions to enforce the settlement

---

[2] Although the parties' decision not to argue laches below or on appeal leaves us without the benefit of the parties' potential arguments in the record, I emphasize that this factor is concerned with the *factual* record available on appeal. Elkins, 392 F.3d at 1162. Given the strong similarities between equitable estoppel and laches, the record available to us would not be materially different (if at all) had the Receiver chose to present a different flavor of equitable theory to bar Ms. DeYoung's untimely motion.

5

agreement below.  [Id. at 49, 103–04.]  Together with the briefing, we have a seventy-page transcript of the district court hearing considering Ms. DeYoung's second motion.  [ROA Vol. II at 102–71.]  The parties do not need any additional chance to add to the voluminous record available to us on this issue.

And Utah courts make clear that "[w]hether laches applies is a question of law."  Veysey v. Nelson, 397 P.3d 846, 847 (Utah Ct. App. 2017).  Even though the "application of laches to a particular set of facts and circumstances presents a mixed question of law and fact," given the district court's largely uncontested factual findings, our analysis focuses on the legal elements of the question.  Id. at 848 (internal quotation marks and citation omitted).  We therefore have full opportunity to consider whether laches applies here based on the thorough record made in the district court and legal nature of our inquiry.  See United States v. Damato, 672 F.3d 832, 844–45 (10th Cir. 2012) (addressing an alternative ground that the parties did not argue below or on appeal because both the second and third Elkins factors supported considering the alternative ground).[3]

---

[3] I emphasize that we generally should not rely on a theory not raised by the parties to affirm a district court order.  See Damato, 672 F.3d at 845 (cautioning the parties that, in future cases, "consideration of an unargued issue is committed to our discretion"—discretion that we sparingly and carefully exercise).  But, in this case, peculiar circumstances foreclose applying the theory relied upon by the district court.  And the extensive record, pure legal inquiry, and similarity of the unargued theory to those briefed by the parties make this issue well-suited for our consideration without the aid of briefing on the laches question.

B.

In law, as in life, timing can be everything. And timeliness is particularly important to claims sounding in equity. Equitable claims require a court to consider the overall fairness of a result. Thus, the "maxim that equity aids the vigilant and not those who slumber on their rights" underpins the doctrine of laches. Kansas v. Colorado, 514 U.S. 673, 687 (1995) (quoting Black's Law Dictionary 875 (6th ed. 1990)).

Put simply, the doctrine of laches bars dilatory claims.[4] Biodiversity Conservation Alliance v. Jiron, 762 F.3d 1036, 1090–91 (10th Cir. 2014). Laches applies when there is: "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." Id. at 1091. And courts "apply the delay and prejudice elements with flexibility." Id. (citing Holmberg v. Armbrecht, 327 U.S. 392, 396 (1946) ("Equity eschews mechanical rules; it depends on flexibility.")). "[L]aches is not, like limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced." Holmberg, 327 U.S. at 396.

---

[4] Requiring reasonable diligence serves several aims. Laches encourages parties to sue when courts are in the best position to resolve disputes. As claims grow stale, parties lose pertinent evidence and defendants invest resources into claimed property that they cannot recover. Stale claims give plaintiffs the unfair advantage of hindsight, while defendants bear the risks associate with a lack of finality. So the doctrine of laches gives courts wide discretion to make case-specific, fact-specific determinations to protect equitable boundaries.

7

In particular, "inexcusable, unreasonable, or undue" delay satisfies the lack of diligence element. Biodiversity Conservation Alliance, 762 F.3d at 1091 (internal quotation marks omitted) (collecting cases). And "undue, substantial, or material" harm to the party asserting the laches defense satisfies the prejudice element. Id. (internal quotation marks omitted) (collecting cases). In analyzing the equities, I therefore consider the timing of Ms. DeYoung's motion and any prejudice her lack of diligence caused the Receiver.

Ms. DeYoung allowed seventeen months to lapse between her first and second motions to enforce the settlement agreement. She also delayed filing her second motion until the eleventh hour—three weeks *after* the Receiver moved to terminate the receivership. In her second motion, Ms. DeYoung focuses on an alleged deficiency in the Receiver's 2016 Notice. She claims that the Receiver did not properly "request permission" from the district court to pursue the assets listed in the Receiver's Notice, as required by the settlement agreement. [ROA Vol. II at 7, 11.] Consequently, Ms. DeYoung maintains the Receiver's failure to properly pursue those assets rendered them "abandoned" under the agreement and the Receiver must now turn them over to her. [ROA Vol. I at 144–48; ROA Vol II at 10–12.]

Although Ms. DeYoung questions the adequacy of the Receiver's Notice and subsequent action (or inaction) related to the identified collectibles and judgments, she fails to justify her delay in filing the second motion. The record shows that Ms. DeYoung knew of the alleged deficiency in the Receiver's Notice by at least June 2016 because she identified it in her first motion to enforce the settlement agreement.

8

[ROA Vol. I at 155–56, 163–64.]  The district court denied that motion as premature in November 2016 because the parties had not satisfied all conditions precedent to performance under the settlement agreement.  [ROA Vol. I at 87–88.]  But Ms. DeYoung concedes that no conditions precedent remained outstanding by December 9, 2016.  [Opening Br. at 19.]  Nevertheless, she waited until April 21, 2018— seventeen months after the district court denied her first motion without prejudice— to file her second motion to enforce the settlement agreement.  [ROA Vol. I at 87–88, 102;] See In re Centric Corp., 901 F.2d 1514, 1519 (10th Cir. 1990) (determining that the doctrine of laches barred a claim that the district court initially terminated without prejudice because the appellant waited twenty months after the claim became ripe to reassert it).  Thus, the timing of Ms. DeYoung's motion supports the application of laches in this case.

While Ms. DeYoung seeks to minimize the significance of her delay, neither the majority nor I find her reasons persuasive.  For example, Ms. DeYoung claims the delay is less substantial because she contacted the Receiver's counsel about the alleged deficiency before filing her second motion.  [Opening Br. at 20.]  But those discussions took place in March 2018, well over one year after Ms. DeYoung could have sought relief in the district court for a deficiency she knew about no later than June 2016.  [ROA Vol. II at 60–63.]  And even though Ms. DeYoung contends she never intended to waive her rights under the settlement agreement, her intent does not preclude the application of laches.  See Royal Air Properties, Inc. v. Smith, 333 F.2d 568, 571 (9th Cir. 1964) ("The defenses of laches and estoppel do not spring

9

principally from intent, as does waiver, but from injury to the deceived party caused by neglect or misleading action to the delaying party."). Finally, Ms. DeYoung's alleged distraction because of collateral litigation matters does not excuse her delay in this case. See In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litig., 790 F.3d 1112, 1117 (10th Cir. 2015) (noting that a party's preoccupation with collateral litigation-related activities does not excuse the failure to timely assert a right). I conclude that Ms. DeYoung's delay in filing her second motion to enforce the settlement agreement is not excusable and therefore weighs heavily in favor of applying the doctrine of laches to bar her motion.

I finally turn to whether Ms. DeYoung's unexcused delay in filing her second motion caused the Receiver to suffer prejudice. "Delay alone without prejudice will not give rise to laches." Harper v. Cont'l Oil Co., 805 F.2d 929, 930 (10th Cir. 1986). But because Ms. DeYoung showed a remarkable lack of diligence in pursing her claim, the doctrine of laches requires that the Receiver suffered only slight prejudice. See Biodiversity Conservation Alliance, 762 F.3d at 1091. On this point, my analysis again aligns with the majority's prejudice discussion. [Majority at 10-11.]

As I discussed above, Ms. DeYoung sat silent for months while the Receiver spent time, money, and effort to investigate and pursue assets, including the identified collectibles and judgments. [ROA Vol. II at 160.] Ms. DeYoung, on the other hand, contends that the Receiver simply carried out her duties by looking into those assets and would suffer no harm if we turned the identified assets over to her

10

now. But, as the majority also explains, [Majority at 8-9,] had the Receiver known that her failure to request permission to pursue the identified collectibles and judgments would render them abandoned, the Receiver could have focused her efforts elsewhere. Mile High Indus., 222 F.3d at 858 (explaining that the doctrine of laches applies to "cases where a protracted acquiescence by plaintiff induces a defendant to undertake substantial activities in reliance on the acquiescence"). The record shows that the Receiver hired a collection agency, auditors, and other third parties to investigate those assets, even though the Receiver did not ultimately collect them. [ROA Vol. II at 160.] Thus, the Receiver suffered some prejudice by deploying resources to investigate assets, even though—according to Ms. DeYoung's motion—the Receiver had no claim to them at the time.

Further, because Ms. DeYoung waited until three weeks after the Receiver filed her final report and moved to terminate the receivership, providing relief on the merits of Ms. DeYoung's claim would have forced the district court to extend the life of the receivership. Indeed, if the district court ruled in Ms. DeYoung's favor, the Receiver would have had to spend additional time and effort to turn over assets and associated information to Ms. DeYoung just as the Receiver prepared to wind up the receivership. And prolonging the life of the receivership undermines the Receiver's interest in finality. See SEC v. Hardy, 803 F.2d 1034, 1038 (9th Cir. 1986) (explaining that "a primary purpose of equity receiverships is to promote orderly and efficient judicial administration of the estate by the district court"). In particular, Ms. DeYoung's eleventh-hour motion eroded the efficient administration of the

11

receivership when a prompt request to consider her known, ripe claim would not have disturbed this interest. See Bolder v. Delo, 985 F.2d 941, 944 (8th Cir. 1993) (affirming the denial of a writ on other grounds, but questioning whether laches should have barred counsel's "'eleventh hour' tactic" because seeking relief at such a late stage "is not consistent with a search for truth and justice"); see also Walker v. Epps, 550 F.3d 407, 412 (5th Cir. 2008) (stating that "eleventh-hour filings are naturally suspect").

I therefore determine that Ms. DeYoung's unexcused lack of diligence caused the Receiver to suffer some prejudice. So, although I disagree with the majority's reasoning, I agree that the district court did not abuse its discretion by denying Ms. DeYoung's second motion to enforce the settlement agreement.